**Julia T. APTER, M.D., Ph.D., on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**Elliot L. RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, et al.**

**No. 72 C 3092.**

United States District Court,
N. D. Illinois, E. D.

June 29, 1973.

grant submitted by Rush-Presbyterian-St. Luke's Medical Center for which plaintiff was to be Program Director. She seeks a declaration that certain statutes and administrative regulations followed by defendants with regard to this proposal are unconstitutional and an injunction restraining defendants from continuing to approve applications and disburse funds until new standards for approving such grants have been implemented and all individuals with conflicts of interest have been removed from decision making bodies within the National Institute of Health. Additionally, she seeks reconsideration of the Training Grant initially refused. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331(a), 1361, 2201 and 5 U.S.C. § 702.

Defendants have moved to dismiss the action on the grounds that: 1) plaintiff lacks standing to prosecute this claim; 2) plaintiff fails to state a claim upon which relief can be granted; and for summary judgment in their favor should the court deny their motions to dismiss. For the reasons set out below, we will grant the defendants' motions to dismiss for lack of standing on the ground that plaintiff has failed to join an indispensable party.

I

The relevant facts for the purposes of this motion may be summarized briefly. Plaintiff, Julia T. Apter, M.D., Ph.D., is currently an attending surgeon at the Rush-Presbyterian-St. Luke's Medical Center (the Center) and a professor of surgery at Rush Medical College. On September 28, 1971, the Center submitted an application to the National Institutes of Health (NIH) for a training grant. The application was entitled "Training in Research and Development of Biomaterials," and sought funding for a program to provide training and instruction in the discipline of biomaterials as part of an effort to combat diseases of the cardiovascular, urinary

Charles Barnhill, Jr., James R. Bronner, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., Michael H. Berman, Asst. U. S. Atty., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff has filed this complaint seeking injunctive and declaratory relief as a result of allegedly arbitrary and invidious discrimination against her on the part of defendants in their refusal to approve an application for a training

and gastrointestinal systems and in the prevention of complications due to surgical procedures. The funding sought was under the auspices of a provision of the Public Health Service Act of July 1, 1944, as amended, 42 U.S.C. § 241(d) which authorizes the Secretary of Health, Education and Welfare to:

> (d) Make grants-in-aid to universities, hospitals, laboratories, and other public or private institutions, and to individuals for such research or research training projects as are recommended by the National Advisory Health Council . . . . and make, upon recommendation of the National Advisory Health Council, grants-in-aid to public [and] nonprofit universities, hospitals, laboratories, and other institutions for the general support of their research and research training programs: . . .

The application was referred to the National Institute of General Medical Sciences (NIGMS), a constituent Institute of the NIH, which then assigned it to its Engineering in Biology and Medicine Training Committee. After a visit to the proposed site by two members of this Committee and two additional consultants, and after consideration by the Committee of both the application and the site visit reports, the application was denied on April 3, 1972.

In challenging this denial, plaintiff alleges a great number and variety of improper or unconstitutional procedures and practices on the part of defendants in the processing of the application. We need not detail the substance of these allegations as plaintiff is faced with a preliminary hurdle of showing she is a proper party to bring this suit.

As noted above, the actual applicant for the grant was Rush-Presbyterian-St. Luke's Medical Center. Plaintiff Apter was named as Program Director. Defendants contend that only the actual applicant has standing to challenge the denial of the grant and since it has not joined this suit as a plaintiff the action must be dismissed. Apter, defendants argue, cannot show "injury in fact" or that her interests are "arguably within the zone of interests to be protected or regulated by the statute . . . in question" as is required by the test set out by the Supreme Court in Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152–153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

Plaintiff, on the other hand, has submitted an extensive presentation demonstrating that, in fact, she did virtually all the work in conceiving, preparing and submitting the application, and would have had the primary responsibility for administering the program if the grant were received. This, she contends, makes her the real party in interest and the party suffering the greatest injury as a result of defendants' actions. Furthermore, she contends she is well within the zone of interests to be protected by 42 U.S.C. § 241, the relevant statute, as one of its primary purposes is to encourage and implement programs proposed and directed by individual scientists.

Defendants do not challenge plaintiff's assertions as to her role in the formulation and submission of the grant application. However, they point out this in no way vitiates the importance of the institutional applicant, the Center, so as to make its interest only nominal. While the Center may have done little specifically with regard to this proposal, the basis of NIH's requirement that there be an institutional sponsor is its legitimate interest in being assured of adequate research and other facilities and proper supervision and distribution of grant funds. From the various documents submitted, it appears that the facilities of the applicant institution are as fully considered in the making of an award as the specific proposal itself. Plaintiff herself admitted in argument that there was a "critically important relationship between the Public Health Service Act, the applicant institution and the program director"; noted the

"symbiotic relationship between *both* parties"; and most significantly, that "neither the institution nor the program director can act without the other." (Brief for Plaintiff, pp. 1–2)

It is precisely this relationship which leads us to conclude that the action cannot proceed without the Center as a party. Even accepting plaintiff's representation of her importance to, and role in, the project, the Center's status as applicant can hardly be characterized as a mere formality. For it is the Center which would be responsible for the implementation and supervision of the program. If it is unwilling to challenge the denial of the application and seek the awarding of the grant, the court should not be in the position of foisting the program on it.

Plaintiff responds by arguing that a dismissal would result in immunizing defendants' misbehavior, as institutional applicants will not risk jeopardizing their relationship with their chief benefactor, the government, for the sake of a single program. It may well be that the Center is not opposed to supporting plaintiff's proposal, but is not willing to take the risk of challenging defendants' practices because of considerations other than the merits of the proposal itself. But that is a decision the Center is entitled to make. The Center must bear the ultimate responsibility for not only this program, if it were to be granted, but for all of the other activities and programs it sponsors. A necessary concomitant of being burdened with the responsibility for these activities is the power to decide how to allocate its resources, facilities, and energies. Plaintiff obviously could not have compelled the Center initially to make the application. We do not see how she can compel it to pursue a challenge to its denial now, if the Center has decided—for whatever reason—that it does not wish to do so. Accordingly, defendants' motion to dismiss for lack of standing on the ground that plaintiff has failed to join an indispensable party will be granted. An appropriate order will enter.