Julia T. APTER, M.D.,
Plaintiff-Appellant,

v.

Elliot L. RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, Defendant-Appellee.

No. 73–2046.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1974.

Decided Jan. 31, 1975.

Helen Hart Jones, Chicago, Ill., for plaintiff-appellant.

James R. Thompson, U. S. Atty., and Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and LAY,* Circuit Judges.

LAY, Circuit Judge.

Dr. Julia Apter, a professor of surgery at Rush-Presbyterian-St. Luke's Medical Center, appeals the dismissal of her complaint challenging the denial of a medical training grant by the Department of Health, Education and Welfare (HEW) and the National Institutes of Health (NIH). The district court held that Dr. Apter was not the applicant for the grant,[1] and therefore lacked standing to bring the action. Apter v. Richardson, 361 F.Supp. 1070 (N.D.Ill.1973). We vacate the dismissal and order reinstatement of plaintiff's complaint.

In 1971 the Medical Center applied to the NIH for a medical training grant under the Public Health Service Act, 42 U.S.C. § 201 et seq.,[2] to train students in

---

* The Honorable Donald P. Lay, United States Circuit Judge of the Eighth Circuit at Omaha, Nebraska, is sitting by designation.

1. Although there are ambiguous references in Dr. Apter's complaint to the effect that she rather than the Medical Center was "the applicant," we find that the district court did not err in treating the complaint as if the application was merely filed by Dr. Apter *on behalf of* the Medical Center. However, we do not think this determination is helpful in resolving the question of standing in this case.

2. The NIH, a federal agency established under the Public Health Service Act, 42 U.S.C. § 201 et seq., is authorized to make "grants-in-aid to universities, hospitals, . . . and other public or private institutions, and to individuals . . . " to encourage research in human medicine. 42 U.S.C. § 241(c).

bio-materials research at three Chicago-area institutions: Northwestern University, Argonne National Laboratories, and the Medical Center. The application was signed by Dr. Mark Lepper, Executive Vice President of the Center, as the responsible institutional official and by Dr. Apter as the prospective Program Director of the training grant. Dr. Apter prepared the application and would have been responsible for administering the $580,000 grant over a five-year period. The NIH referred the application for screening to a committee of individuals employed by various private institutions. The complaint alleges that in December 1971, while the application was pending, Dr. Apter testified before a Senate subcommittee concerning alleged conflicts of interest of some of the NIH committee members, who are among the named defendants in the present case. A month later, in January 1972, the NIH committee recommended denial of the application. Official denial followed in April 1972. Subsequent requests for reconsideration were likewise denied. Dr. Apter then filed this suit, alleging *inter alia* that the grant was denied due to the fact that a woman (Dr. Apter) was designated as Program Director (sex discrimination), that she participated in feminist political activities, and in retaliation for her Senate testimony.[3] The Center did not join the suit allegedly due to fear of adverse action by NIH on future grant applications.

The district court found that the Medical Center, as the applicant, was the real party in interest, that Dr. Apter lacked standing, and that she could not cure her own lack of standing by joining the Center as a party defendant.

■■ The difficulty we have with approaching standing through the traditional real party in interest tests of F.R. Civ.P. 17(a) is that those tests focus on the source and "ownership" of the legal right asserted. In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court makes it clear that the "legal interest" test is no longer determinative of standing to raise federal constitutional issues. *Id.* at 153, 90 S.Ct. 827. Furthermore, it is settled that once a party is found to have standing to raise a constitutional point, that ruling disposes of any real party in interest objections as well. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1552 at 694 (1971). *See also* United Fed. of Postal Clerks v. Watson, 133 U.S.App.D.C. 176, 409 F.2d 462, 469–470 (1969); Smith v. Board of Education, 365 F.2d 770, 777–778 (8th Cir. 1966).

■ To show standing under the Administrative Procedure Act, 5 U.S.C. § 702, a plaintiff must allege (a) an injury in fact and (b) "that the interest sought to be protected . . . is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. v. Camp, *supra,* 397 U.S. at 153, 90 S.Ct. at 830. The purpose of this requirement is to ensure that the plaintiff has a sufficient personal stake in the outcome of the controversy to ensure vigorous presentation of the issues. *See, e. g.,* Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Friendship Medical Center, Ltd. v. Chica-

---

**3.** The complaint basically alleges that:

(1) The Public Health Service Act and regulations thereunder (at least the sections relevant to training grants) violate the Fifth Amendment by undue delegation without adequate standards.

(2) The NIH decision-making process fails to conform to requirements of the Administrative Procedure Act (APA) that rules and standards be published, that intra-agency review be standardized, and that deci-

sion-makers by subject to disqualification for personal bias.

(3) The NIH committee members violate federal conflict of interest regulations and NIH regulations.

(4) The instant application was denied on medically irrelevant and constitutionally improper bases, to-wit, personal bias against Dr. Apter, the prospective Program Director, because of her Senate testimony, her women's rights activities and her sex.

go Board of Health, 505 F.2d 1141 (7th Cir. 1974).

■ We conclude that Dr. Apter has alleged sufficient economic and non-economic harm to show injury in fact. The complaint alleges that her exercise of First Amendment rights to testify before a Senate subcommittee and to participate in feminist associations was among the reasons for denial of the grant, and that the denial chills those freedoms. Non-economic injuries have previously been recognized as a basis for standing. *See, e. g.,* United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (aesthetic, environmental and recreational damage); Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (loss of social benefits of integrated community); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (refusal to serve black on basis of race); Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (chilling effect on First Amendment rights of law students arising from "character check" requirements for admission to Bar of New York); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (unequal weighting of votes). Since plaintiff Apter alleges that the agency action has been carried out with the actual purpose and effect of injuring her, her complaint is not merely of an "abstract injury" common to all who favor enforcement of the law, nor does it raise only a possible but unlikely future injury. *See* Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); Ex parte Levitt, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1938); Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

In addition to these invasions of plaintiff's First and Fifth Amendment freedoms, Dr. Apter alleges economic injury as well. In an affidavit filed in the district court,[4] she states that she spent 800 hours in preparing the application, and that she has been deprived of economic and professional benefits which she anticipated in return for her preparation time. In addition to any salary she would have received as Program Director, she alleges she will be denied professional prestige and the opportunity to associate with and train students under training grants in a significant area of medical research. These are cognizable injuries, which also lend more than an abstract interest to Dr. Apter's personal stake in the suit.

Preparation time devoted to a project in expectation of economic benefits has been held a sufficient "personal stake" in Park View Heights Corp. v. City of Black Jack, 467 F.2d 1208 (8th Cir. 1972). Employers have been permitted to challenge the denial of alien employment certificates to persons they wished to hire, since the employer as well as the prospective employee sustained "injury in fact." First Girl, Inc. v. Regional Manpower Admin., 499 F.2d 122, 123 (7th Cir. 1974); Secretary of Labor v. Farino, 490 F.2d 885, 889 (7th Cir. 1973). *See also* Investment Co. Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970); Association of Data Processing Service Organizations, Inc. v. Camp, *supra.*

■ The fact that the alleged wrong may also have injured third parties does not deprive plaintiff of standing so long as she as well is injured in fact. Sierra Club v. Morton, 405 U.S. 727, 736–738, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Cotovsky-Kaplan Physical Therapy Ass'n, Ltd. v. United States, 507 F.2d 1363 (7th Cir. 1975); Friendship Medical Center, Ltd.

4. After the district court first ruled (361 F.Supp. 1070), the plaintiff filed a motion for reconsideration and attached an affidavit supporting the allegations of her complaint. The court held another hearing and entered a further memorandum opinion (unpublished) reaffirming the original dismissal.

v. Chicago Board of Health, *supra.* It was on this basis that a white tenant was held to have standing to challenge his landlord's refusal to rent to blacks. The white tenant suffered injury in the loss of the social benefits of an integrated community and through the social stigma of life in a "white ghetto." Trafficante v. Metropolitan Life Ins. Co., *supra. See also* Albert, Standing to Challenge Administrative Action: An Inadequate Surrogate for Claim for Relief, 83 Yale L.J. 425, 465–67 (1974); Note, Standing to Assert Constitutional Jus Tertii, 88 Harv.L.Rev. 423, 429 n. 36 (1974). *Cf.* First Girl, Inc. v. Regional Manpower Admin., *supra;* Secretary of Labor v. Farino, *supra.* Thus, we find that Apter has alleged injury in fact.

■ Second, we find that Dr. Apter meets the so-called "zone of interests" test. Clearly, her rights to testify before a Senate subcommittee and to participate in feminist political groups without punitive denial of government benefits are protected by the Constitution and on these facts, by the Public Health Service Act as well. The Act provides that the Surgeon General must

> . . . encourage . . . and render assistance to . . . scientific institutions, and scientists in the conduct of, and promote the coordination of, research, investigations . . . and studies relating to the causes, diagnosis, treatment, control, and prevention of physical and mental diseases and impairments of man . . . .
> 42 U.S.C. § 241.

As Judge Stevens recently observed in an analogous case involving standing:

> The test is not whether these plaintiffs are regulated by the statute but whether the interests asserted by them

*arguably* fall within the zone of interests so regulated. (Emphasis added).

Cotovsky-Kaplan Physical Therapy Ass'n, Ltd. v. United States, *supra,* 507 F.2d at 1366.

It is clearly arguable that the legislative purpose underlying the Act can be fulfilled only by protecting the interest of medical research personnel and medical faculties in fair and objective distribution of government grants. *Cf.* Association of Data Processing Service Organizations, Inc. v. Camp, *supra;* Investment Co. Institute v. Camp, *supra;* Arnold Tours, Inc. v. Camp, *supra.*

■ In finding standing, we of course do not in any way express judgment upon the possible merits of plaintiff's allegations. We do note that the Public Health Service Act does confer broad discretion in the funding of training programs. *See* 42 U.S.C. §§ 241, 289c. *Cf.* Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969).[5] This consideration leads to the conclusion that the medical merits of NIH decisions on training grants may be committed to the unreviewable discretion of the agency. However, that does not mean that NIH actions wholly escape judicial scrutiny. Where it is alleged that the agency has transgressed a constitutional guarantee or violated an express statutory or procedural directive, otherwise non-reviewable agency action should be examined to the extent necessary to determine the merits of the allegation. *See, e. g.,* Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (constitutional questions); Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) (statutory duty); Kletschka v. Driver,

---

**5.** The Second Circuit has held that Veterans Administration research grant decisions were subject only to very limited review. Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969). The court noted the burden that general review would place upon the court, requiring digestion of a mass of technical data before it could decide that one application was so superior that it was an abuse of discretion to reject it in favor of others. A further prob-

lem noted was the impracticability of reviewing the agency's judgment of the relative personal competence of applicants. 411 F.2d at 443. Those problems would of course arise here, too, if NIH decisions were reviewable on a substantial evidence or abuse of discretion standard. We are mindful as well that judicial review of training grant decisions might place a heavy burden of litigation and delay upon the agency and its grantees as well.

*supra* (statutory duty); Cappadora v. Celebrezze, 356 F.2d 1, 6 (2d Cir. 1966) (administrative regulations).

The judgment of the district court is reversed and remanded for further proceedings.