Hinkle, J.
In its amended complaint, plaintiff New England Physical Therapy Network, P.C. claims defendants systematically discounted Personal Injury Protection (“PIP”) medical expense claims based on operation of a so-called “Silent PPO.”[2] Plaintiff alleges that defendants misappropriated more than $204,000 in preferred provider organization discounts and applied those discounts to Massachusetts automobile insurance PIP claims, and, as a result, insurers have paid claims at a reduced rate.
The amended complaint contains eight counts. Count I alleges breach of contract against Healthcare Value Management, Inc. (“HCVM”). Counts II and III allege breach of contract and third-party beneficiary claims against Concentra Managed Care, Inc. (“Concentra”). Counts IV and v. allege violation of G.L.c. 93A against Con centra and HCVM respectively.[3] Counts VI-VIII allege breach of G.L.c. 90, §34M, breach of contract and G.L.c. 93A against Commerce Insurance Company, The Premier Insurance Company of Massachusetts, Inc. and Arbella Mutual Insurance Company (collectively, the “automobile insurers").
Defendants now seek to dismiss the amended complaint under Mass.R.Civ.P. 17(a), arguing that plaintiff is not the real party in interest. For the reasons set forth below, after a hearing, the motion is DENIED in part and conditionally ALLOWED in part.
BACKGROUND
The complaint makes the following allegations, among others.[4] Plaintiff, a professional corporation, includes approximately 55 physical therapists (the “members”) licensed in Massachusetts. Complaint ¶27. On behalf of its members, plaintiff enters into preferred provider agreements with preferred provider organizations. Id.
HCVM, a health care business that operates and maintains a preferred provider organization, solicited plaintiff to have its members become preferred providers in HCVM’s preferred provider organization. Id. ¶¶6, 28. HCVM told plaintiff that it had contracted with certain clients/payors, including group health insurers, unions, employers and workers’ compensation insurers, to pay the preferred providers for the delivery of health services. Id. ¶¶28, 29.
Plaintiff executed a preferred provider agreement with HCVM under which, among other things, HCVM agreed to contract with plaintiff “to arrange for the provision of quality health care services to Preferred Provider Network members in an efficient and cost effective manner” and plaintiff agreed “to provide HCVM and its members health servicesl.]” Id. ¶¶30, 31. Plaintiffs members agreed to provide health care services at a volume discount, specifically a flat fee of $50, to HCVM’s clients/payors who complied with the terms and conditions of the preferred provider agreement. Id. ¶32. In return, HCVM’s clients/payors agreed to educate, market and create incentives to increase the volume of patients directed to plaintiff s members. Id. ¶33. HCVM agreed that its clients/payors would be bound by the terms and conditions of the preferred provider agreement and further agreed that its clients/payors would pay the preferred providers within 30 days of receipt of a preferred provider’s bill. Id. ¶¶34-35. Under the contract, HCVM’s discounts would be forfeited by clients/payors, at a participating preferred provider’s discretion, for all bills not paid within 30 days. Id. ¶35.
Plaintiff contends that the preferred provider agreement did not provide for the sale or disclosure of plaintiffs members’ discounts to clients who did not comply with the terms and conditions of the preferred provider agreement, to managed care discount brokers, such as Concentra, or to the defendant automobile insurers to be applied to automobile medical expense claims. Id. ¶36.
After executing the preferred provider agreement with plaintiff, HCVM allowed Concentra, a managed care company that provides cost containment and fully integrated care management to insurance companies, to access a database containing discount rate information for HCVM’s preferred providers, including plaintiffs members. Id. ¶¶7, 37. HCVM disclosed this information to Concentra for a fee as part of a broker agreement. Id. ¶37.
Based on the language of the preferred provider agreement, HCVM was obligated to ensure that its clients/payors adhered to the terms and conditions of the preferred provider agreement. Id. ¶38. Plaintiff contends that HCVM’s broker agreement with Concentra provides for compliance with the HCVM preferred provider agreement. Id. As a result, plaintiff claims that its members are intended third-party beneficiaries of HCVM’s broker agreement with Concentra. Id.
Concentra then entered into agreements with the defendant automobile insurers to allow Concentra to reprice medical bills or obtain discount rates, using the volume discount information obtained from HCVM. Id. ¶39.
Concentra processes medical expense claims through its cost containment system (“CC System”), a *111 software program capable of reviewing medical charges. Id. ¶40. The CC System has two features: a Preferred Provider Repricing System (“PPO Repricing System”) and a Usual Customary Repricing System. Id. The PPO Repricing System is a database which applies PPO discounts to indemnity insurance medical expense claims. Id. ¶41. Plaintiff claims that the PPO Repricing System is designed to apply retrospectively preferred provider organization discounts to indemnity medical expense claims despite the fact that the indemnity insurer has no contract or entitlement to the discount. Id.
Concentra established a managed care automobile program, the Voluntary Network Access Program (the “VNA Program”), to market its preferred provider organization discounts to the defendant automobile insurers and to process personal injury protection medical bills according to a discounted payment schedule. Id. ¶42. Plaintiff contends that when Concentra implemented the VNA Program, Concentra knew that it was illegal to direct Massachusetts automobile insurance claimants to an alleged network of preferred providers. Id. ¶43.
Plaintiff alleges that the VNA Program was specifically designed to reduce automobile medical expense claims for automobile insurers where legislation or regulation had not been enacted to do so and that the VNA Program allows automobile insurers access to preferred provider organization discounts. Id. ¶44. Plaintiff also alleges that the VNA Program contains none of the steerage mechanisms of legitimate preferred provider organizations and that it does not comply with HCVM’s preferred provider agreement. Id. ¶45. Specifically, plaintiff claims that the VNA Program lacks financial incentives to increase patient volume, lacks education and marketing requirements as set forth in the preferred provider agreement and lacks identification cards for automobile insurers. Id.
Plaintiff contends that under the VNA Program, Concentra brokered plaintiffs discounts to the defendant automobile insurers for a fee of up to one third the amount of the discount. Id. ¶46. Under the Cost Containment Agreements with the defendant automobile insurers, Concentra allowed those insurers access to its PPO Repricing System, a system designed to track a health care payment and delivery system consisting of networks of doctors and hospitals and also allowed those insurers to tap into discounts on PIP medical expense claims. Id. ¶47. Plaintiff alleges that Concentra told those insurers that the preferred providers contained in the PPO Repricing System agreed under separate contracts for negotiated discounts that could be applied retroactively through a bill review process. Id. ¶48. Plaintiffs members’ discounts were contained in the database systems and disclosed to the defendant automobile insurers as part of the Cost Containment Agreements. Id. ¶49.
After treating their patients, plaintiffs members submit medical bills arising out of automobile accidents to the defendant automobile insurers for payment under G.L.c. 90, §34M, the Massachusetts Personal Injury Protection (“PIP”) statute.[5] Id. ¶50. The bills are submitted by the defendant's automobile insurers to Concentra for processing through its PPO Repricing System. Id. Concentra processes the bills through the PPO Repricing System, applies the members’ discounts to the bills and sends Explanation of Benefits forms to the defendant automobile insurers. Id. ¶52. The insurers then pay plaintiffs members for the discounted amounts. Id. ¶53.
Plaintiff argues that it is entitled to damages in the amount of the difference between the payments received from the defendant automobile insurers and the full amounts charged by plaintiffs members. Plaintiff also seeks an injunction against continued disclosure of proprietary and confidential discount information and further discounting of plaintiffs PIP medical expense claims based on preferred provider agreement discounts. Defendants seek to dismiss the complaint under Rule 17(a), arguing that plaintiff is not the real party in interest.
DISCUSSION
Mass.R.Civ.P. 17(a) states in relevant part:
Except for any action brought under General Laws, chapter 152, section 15, every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose action the benefit is brought... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real parly in interest.
The purpose of Rule 17(a) is to ensure that a defendant is only required to defend an action brought by the proper plaintiff and that any such action need only be defended once. Massachusetts Ass’n of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 297 (1977). The effect of the rule is to avoid a multiplicity of suits by similarly situated plaintiffs involving the same or similar courses of action. Id. The named claimant must be the person or entity who by substantive law possesses the right being asserted, not necessarily the party who will derive the ultimate benefit from the relief sought. James W. Smith & Hiller B. Zobel, Rules Practice §17.2, at 4 (1975).
*112 Defendants argue that the amended complaint should be dismissed because plaintiff lacks associational standing to represent its members in this suit under United States Supreme Court precedent. For purposes of the Article III case or controversy requirement and prudential considerations defining and limiting the role of courts, an association has standing to sue on behalf of its members if one or more member has suffered an injury which gives him standing to sue on his own behalf; the injury pertains to the association’s purposes; and neither the claims asserted nor the relief requested requires participation of individual members. Hunt v. Washington State Apple Adver. Comm’n, 432 U.S. 333, 341-43 (1977). An association’s standing in such cases is limited to seeking declaratory, injunctive or other prospective relief onbehalf of its members and does not extend to monetary damages. Hunt v. Washington State Apple Adver. Comm’n, 432 U.S. at 343; Warth v. Seldin, 422 U.S. 490, 515-16 (1975). Massachusetts follows the Hunt test in cases involving associational standing to seek declaratory relief challenging governmental action. See Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Bd., 416 Mass. 635, 638 n. 4 (1993); Massachusetts Ass'n of Cosmetology Schools, Inc. v. Board of Registration in Cosmetology, 40 Mass.App.Ct. 706, 708 (1996). The defendants contend that this Court should also apply this test in determining whether plaintiff is the real pariy in interest under Mass.R.Civ.P. 17(a).
A plaintiff must both be the real party in interest under Rule 17(a) and possess standing to bring an action. Charles Allen Wright & Arthur Miller, Federal Practice & Procedure §1542, at 330 (1990).[6] The real party in interest inquiry under Rule 17(a) focuses on the source and “ownership” of the legal rights asserted, while the broader concept of standing involves constitutional case or controversy requirements and prudential considerations of the court’s jurisdiction. See Apter v. Richardson, 510 F.2d 351, 353 (7th Cir. 1975); Wright & Miller, Federal Practice & Procedure §1542, at 327-33. The fact that one is the real party in interest under Rule 17(a) is not determinative of the standing issue; however, at least in cases involving constitutional rights, a finding of standing disposes of any real party in interest objections. Apter v. Richardson, 510 F.2d at 353; Zee Medical Distributor Assoc. v. Zee Medical, Inc., 23 F. Sup.2d 1151, 1154 (N.D.Cal. 1998). To the extent that standing is understood to mean that the plaintiff has actually been injured by the action that he is challenging, “it closely resembles the notion of real party in interest under Rule 17(a), inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.” Wright & Miller, Federal Practice & Procedure §1542, at 329-30. Indeed, Massachusetts courts appear to have treated questions of standing and real party in interest under Rule 17(a) as intertwined where the plaintiff is an association. See, e.g., Massachusetts Ass’n of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. at 296-97 (concluding that recognizing standing of association to challenge insurance regulation affecting members effectuates purposes of Rule 17(a)); Massachusetts Retired Police & Firefighters Ass’n., Inc. v. Retirement Bd. of Belmont,, 15 Mass.App.Ct. 212, 214-15, rev. den., 388 Mass. 1105 (1983) (concluding that recognizing standing of Retired Police & Firefighters Association to challenge retirement board regulation serves purposes of Rule 17(a)).
Focusing solely on the Rule 17(a) requirement that the named plaintiff must be the person or entity who by substantive law possesses the right being asserted, and not necessarily the party who will derive the ultimate benefit from the relief sought, this Court concludes that plaintiff is a real party in interest with respect to Counts I, III and VII of the amended complaint because Rule 17(a) expressly permits a party who has contracted for the benefit of another to sue in its own name. This Court is not persuaded by the defendants’ argument that because plaintiff seeks to recover damages in the amount of the difference between the payments received and the full amounts charged, the plaintiff really seeks rescission, not enforcement, of the contract and damages under the PIP statute. With respect to Count VI of the complaint, however, which alleges a violation of G.L.c. 90, §34M, and the derivative Chapter 93A claims in Counts v. and VIII, NEPTN is not the real party in interest because G.L.c. 90, §34M confers aright to recover only upon an “unpaid party”: i.e., one who has provided medical services under PIP. See G.L.c. 90, §34M (2000); Ny v. Metropolitan Prop. & Cas. Ins. Co., 51 Mass.App.Ct. 471, 475, rev. den., 435 Mass. 1103 (2001). Nonetheless, in the absence of unfair surprise or prejudice, I am reluctant to dismiss claims because of a technical defect in pleading, particularly where there is ample reason to view the named plaintiff as the real party in interest. Mellinger v. West Springfield, 401 Mass. 188, 194 (1987).[7] One purpose of Rule 17(a) is to prevent forfeiture of an action by allowing joinder or substitution of the real party in interest. Berman v. Linnane, 434 Mass. 301, 305 (2001).
In light of these considerations, I will allow plaintiff 30 days to avoid dismissal of Counts V, VI and VIII by joining its individual members as plaintiffs. To the extent that Rule 17(a) incorporates broad principles of standing, such action will thus remedy the problem that in addition to injunctive relief, the amended complaint seeks to recover monetary damages, requiring individualized Inquiry and direct participation of plaintiffs members.
ORDER
For the foregoing reasons, defendants’ motion to dismiss the amended complaint under Rule 17(a) is DENIED as to Counts I, III and VII but ALLOWED as to the remaining counts unless plaintiffs individual members are joined or substituted as plaintiffs within 30 days.

This case has been consolidated with Southeast Physical Therapy Services, Inc. v. HealthCare Value Management, Inc. et al., Suffolk Superior Court C.A. No. 98-3546E (“SEPT case"). [Editor’s Note: For an opinion reported in the SEPT case, see 11 Mass. L. Rptr. 531 (July 17, 2000) (King, J.) (denying plaintiffs request for class certficiation).]

On August 30, 1999, this court (Gershengorn, J.) allowed plaintiff and defendant Concentra’s assented to motion to dismiss Counts II and IV. A motion to dismiss Count v. on Rule 12(b)(6) grounds is pending.

Defendants accept these allegations as true, as they must, for purposes of the pending motion.

This statute provides in relevant part: “in any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract . . .” G.L.c. 90, §34M (2000).

Exceptfor the reference to G.L.c. 152, §15, Mass.R.Civ.P. 17(a) is virtually identical to Fed.R.Civ.P. 17(a).

I am mindful that defendants filed their motion to dismiss approximately three years after plaintiff commenced this action.