MASSACHUSETTS RETIRED POLICE AND FIREFIGHTERS
ASSOCIATION, INC. vs. RETIREMENT BOARD
OF BELMONT.

Middlesex.  October 14, 1982. — January 28, 1983.
Present: HALE, C.J., CUTTER, & PERRETTA, JJ.

*Public Employment*, Retirement. *Retirement. Administrative Law*,
Agency, Primary jurisdiction. *Administrative Matter. Jurisdiction*,
Administrative matter. *Practice, Civil*, Declaratory relief, Standing.
*Contributory Retirement Appeal Board.*

An association of retired police officers and firefighters was an "interested
party" having standing, on behalf of those of its members who were
retired police officers or firefighters of the town of Belmont, to main-
tain an action against the retirement board of the town for a declara-
tion as to the rights of such members respecting the adjustment of their
retirement allowances under G. L. c. 32, §§ 90A and 90C, and under
G. L. c. 32, § 102.  [214-216]
The grant of jurisdiction to the Superior Court in G. L. c. 32, § 24 (1), to
enforce basic public employee retirement allowances included juris-
diction to entertain an action against a municipal retirement board for
a declaration as to the rights of certain retired persons respecting the
adjustment of their retirement allowances under G. L. c. 32, §§ 90A
and 90C, and under G. L. c. 32, § 102.  [216-218]
A judge of the Superior Court acted properly within his discretion in
granting declaratory relief in an action by an association of retired
police officers and firefighters, on behalf of its affected members,
against a municipal retirement board, notwithstanding the fact that
neither the association nor such members had resorted to any of the ad-
ministrative remedies available from the municipal board and the
Contributory Retirement Appeal Board, where the action was heard
on a statement of agreed facts, appeared to involve only questions of
statutory interpretation, and was commenced by a complaint accom-
panied by an affidavit under G. L. c. 231A, § 3.  [218-219]
Increases in certain retirement allowances made by a municipality pursu-
ant to G. L. c. 32, §§ 90A and 90C, as well as those provided under
G. L. c. 32, § 102, become a permanent part of the fixed retirement
allowances and are required to be paid in the year of the increases and
in subsequent years, except that in any particular year in which there
is both a § 102 increase and a §§ 90A, 90C increase only the greater of
the two is to be added to the retirement allowance.  [219-221]

CIVIL ACTION commenced in the Superior Court on May 31, 1977.

The case was heard by *Urbano, J.*

*Roger D. Matthews (Robert J. Morrissey,* Town Counsel, *& Devra G. Bailin* with him) for the defendant.

*Francis X. Coppinger* for the plaintiff.

CUTTER, J. With respect to certain retirement statutes, G. L. c. 32, §§ 90A, 90C, and 102 (as from time to time in force), the Massachusetts Retired Police and Firefighters Association, Inc. (the Association), a nonprofit corporation, seeks declaratory relief (G. L. c. 231A and G. L. c. 32, § 24) in behalf of at least all of its members who are retired police officers or retired firefighters of the town of Belmont. The defendant (BRB) exists as a board under G. L. c. 32, § 20(4). The case was heard in the Superior Court upon a statement of agreed facts and appears to involve only questions of statutory interpretation concerning the application of c. 32, §§ 90A, 90C, and 102, to the agreed facts.[1]

Under §§ 90A and 90C, cities and towns, which (as Belmont has done) accept those sections, are permitted in their discretion (by methods described in those sections) to increase the retirement allowances of specified retired town employees. Such increases hereafter usually are referred to as "90A/90C increases." Section 102 was first inserted by St. 1966, c. 661, § 3. In recent years the section has been revised frequently. It has required towns to increase the retirement allowances of specified employees by various percentage increases in the cost of living (hereafter usually referred to as "§ 102 increases"), determined generally in relation to the percentage change in the United States Consumer Price Index for each year.[2] In recent years (since St. 1976, c. 126, § 1), the amount of the increase has been

---

[1] Relevant portions of these statutes and their pertinent legislative histories are set out in the Appendix of this opinion.

[2] Theoretically, at least, § 102 has provided for decreases in retirement allowances in the event of decreases in the cost-of-living index. No such decreases are involved in the present case. There is thus no necessity of discussing any problem which may arise as to decreases.

made "by such percentum as the [G]eneral [C]ourt shall determine." The complaint (apart from issues of standing, jurisdiction, completion of administrative "primary jurisdiction"[3] remedies, and existence of a justiciable controversy) presents questions (see part 2 of this opinion, *infra*) with respect to the relationship between the sometimes overlapping 90A/90C increases and the § 102 increases. This overlapping has been affected substantially over the years by the changing terms of successive versions of § 102.

The trial judge determined (a) that the Association had "standing" as a representative of those of its members affected by BRB's somewhat restrictive interpretation of c. 32, §§ 90A, 90C, and 102, as in effect from time to time; (b) that the Association was not required to resort to and complete all the administrative remedies afforded to its affected members before BRB and the State's Contributory Retirement Appeal Board (CRAB, existing under G. L. c. 32, § 16 [4]); and (c) that the Superior Court had jurisdiction to grant declaratory relief. He then made a declaration of the rights of affected Association members under the relevant statutory sections, in general following the Association's contentions. BRB has appealed from the judgment granting declaratory relief.

1. We first consider procedural problems dealt with by the trial judge.

A. *The Association's Standing and Jurisdiction of the Superior Court.*

BRB contends that the Association has no interest in this litigation sufficient to permit it to represent its members affected by adverse and restrictive interpretations by BRB under §§ 90A, 90C, and 102, of the rights of retired Association members. The trial judge, in recognizing the Association's standing, relies largely upon general language in *Massachusetts Assn. of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 297-298 (1977, hereafter referred to as the *MAIIAB* case) that to recognize a

---

[3] See *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220-222 (1979).

corporation like the Association under Mass.R.Civ.P. 17(a), 365 Mass. 763 (1974), "as the real party in interest . . . not only avoids a multiplicity of actions by the individual members of the association, but also assures that the interests of the members as a collective group can be fully presented . . . due to the pooling of financial resources which is possible. Not only are there no valid reasons for refusing to recognize the status of MAIIAB as the real party in interest, but a failure to do so will, in all probability, disserve the explicit purpose of rule 17(a)."[4]

The trial judge also ruled in this proceeding, by virtue of G. L. c. 32, § 24(1), when read with G. L. c. 32, § 20(5)(b),[5] that the Superior Court had jurisdiction to grant declaratory relief upon petition of the Association, which he treated as an "interested party." See G. L. c. 231A, §§ 1-3. It should be noted that §§ 90A, 90C, and 102 each provide for supple-

---

[4] The trial judge noted that, in the present case, the Association had at least thirty-two members residing in Belmont, including Gilbert Frost and Clarence Forrest who, as individuals, had been parties to earlier litigation or controversies before BRB and CRAB on closely similar issues under §§ 90A and 90C and earlier versions of § 102. Although not enough appears in this record to permit any precise determination of the extent of the direct interest of Association members in the issues involved in this case, nothing suggests that the Association represents any interest adverse to that of any members. Several members of the Association by affidavit have joined in support of the Association's position in this proceeding. The Association's contentions seem to be consistent with the probable general interests of all its members. The "pooling of financial resources" mentioned in the *MAIIAB* case, at 298, is of importance where, as here, each affected member's claim is so small as to make individual litigation about it disproportionately expensive.

[5] Relevant portions of these two sections, inserted by St. 1945, c. 658, § 1, are quoted below (emphasis supplied).

*Section 24(1).* "The superior court shall have jurisdiction in equity upon petition of the commissioner of insurance *or any interested party* to *compel the observance* and to restrain the violation of any provision of sections one to twenty-eight inclusive . . . ."

*Section 20(5)(b)* states that any board of a retirement system shall "provide *for the payment of retirement allowances* and other benefits and for all other necessary expenditures under" §§ 1 to 28, inclusive, and "shall have such other powers and shall perform such other duties and functions as are necessary to comply with such provisions."

ments to the basic retirement allowances of former employees payable under the provisions of c. 32, §§ 1 to 28, especially §§ 5 and 7. These supplements are not readily susceptible of being dealt with apart from the basic allowances. The grant of jurisdiction in § 24(1) to enforce the basic allowances thus reasonably can be interpreted as extending also to the supplements.

The practical advantages, as a matter of judicial administration, of treating (a) the Association as having standing to represent its members, and (b) the Superior Court as having jurisdiction to grant relief under § 24, are significant in a case such as this. The problems of statutory interpretation appear likely to recur[6] frequently or to result in a multiplicity of proceedings, and the only issues are questions of law, i.e., general questions of statutory interpretation. Compare the discussion in *General Dynamics Corp.* v. *Assessors of Quincy*, 388 Mass. 24, 27-29 (1983).

B. *Completion of Possible Administrative Remedies.*

BRB contends that the Association (or its affected members) must be required to have resort to the administrative remedy available to its affected members, that is, before BRB in the first instance and thereafter before CRAB. This contention in effect treats CRAB as an administrative agency having primary jurisdiction. See *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220-222 (1979). Under earlier forms of c. 32, § 102, individual retirees from the Belmont town service did have resort to the procedure under c. 32, § 16(4), and CRAB rendered decisions expressed in general terms, upon the relationship between 90A/90C increases and § 102 increases. In 1971, a

---

[6] General Laws c. 231A, § 2, inserted by St. 1974, c. 630, § 1, permits declaratory relief to obtain a determination of the legality of "administrative practices and procedures of any municipal . . . agency . . . which practices or procedures are alleged to be in violation of . . . laws of the commonwealth." These "practices or procedures" are defined in § 2 as "the customary and usual method of conducting municipal . . . business." In the present case, there was strong indication that BRB, unless prevented, would persist in the somewhat restrictive interpretation of the relevant statutes.

CRAB decision was based on the 1967 form of what is now § 102. In 1975, a CRAB decision was based on the amendments of § 102 by St. 1972, c. 793, § 7. See note 11, *infra*.

Various considerations affect the problem whether, in the present controversy, the Association must cause to be completed the same administrative procedures before BRB and CRAB.

(1) There are here no facts to be found by CRAB in view of the statement of agreed facts. In this, the present case differs from *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 448-453 (1973), where important facts pertinent to agency policy remained to be decided by that commission.

(2) CRAB is not given, by G. L. c. 32, significant regulatory functions[7] but seems to be principally a body set up to adjudicate disputes. See *Masiello* v. *Contributory Retirement Appeal Bd.*, 360 Mass. 856 (1971). Although a substantial volume of cases relating to the same retirement statutes may give CRAB some familiarity with retirement problems, where no questions of fact are to be decided, pure issues of statutory interpretation are probably as readily decided by a court as by CRAB.

(3) General Laws, c. 231A, § 3, was amended by St. 1974, c. 630, § 2, which added the provision set out in the margin.[8]

---

[7] General Laws c. 32, § 20(5)(*b*), inserted by St. 1945, c. 658, § 1, gives to local retirement boards power to "make . . . regulations consistent with law, which shall be subject to approval" by the Commissioner of Insurance who, by c. 32, § 21(4), has power to promulgate regulations to carry out §§ 1-28, inclusive, and to approve regulations promulgated by retirement boards. Thus BRB, the initial agency designated for review of problems of overlap between the 90A/90C increases and the § 102 increases has power to prescribe regulations only with the approval of the Commissioner of Insurance as policy maker. CRAB appears to have no such power to prescribe regulations. Thus neither BRB nor CRAB would seem to be the type of agency normally given "considerable leeway in interpreting a statute it is charged with enforcing." See *Grocery Manufacturers of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75 (1979).

[8] The additional provision reads: "The failure to exhaust administrative relief prior to bringing an action . . . [for declaratory relief] shall not bar the bringing of such action if the petition for declaratory relief is accom-

An affidavit, expressed in general terms, of the type set out in the 1974 amendment, was attached to the Association's complaint.

(4) Completion of primary jurisdiction remedies frequently has not been required in the tax field (see *Sydney* v. *Commissioner of Corps. & Taxn.*, 371 Mass. 289, 293-295 [1976]), although as is said in the *East Chop Tennis Club* case, 364 Mass. at 449-451, the Supreme Judicial Court only rarely has permitted declaratory relief (without resort to usual channels of administrative relief) in other types of cases. See, however, *Metropolitan Dist. Police Relief Assn.* v. *Commissioner of Ins.*, 347 Mass. 686, 689 (1964), where declaratory relief was granted as "a sensible and proper method of obtaining judicial interpretation of the applicability of somewhat confusing statutes." We think that the present case meets the criteria mentioned in the *Sydney* case, at 294-295, as "[f]avorable to maintenance of a declaratory action," namely "that the issue is important or novel or recurrent; that the decision will have public significance, affecting . . . many besides the immediate litigants; or that the case reduces to an issue of law without dispute as to the facts."[9]

All the considerations just listed bear upon the question whether and to what extent a trial judge has discretion to grant declaratory relief where to do so means apparent disregard of usual administrative channels of relief. We are of opinion that, in the circumstances, the trial judge here acted within his discretion.

---

panied by an affidavit stating that the practice or procedure set forth pursuant to the provisions of section two [see note 6, *supra*] is known to exist by the agency or official therein described and that reliance on administrative relief would be futile. For the purposes of this section practice or procedure means the customary and usual method of conducting agency or official business."

[9] It should be remembered that c. 231A, §§ 1 and 2, state that the procedures of the chapter "may" be employed. The word "may" implies some discretion. Section 3 gives a court discretionary power to refuse relief "for . . . sufficient reasons," a provision which may indicate some range of discretion to grant declaratory relief. Such relief is described in § 9, inserted by St. 1945, c. 582, § 1, as "remedial" and as "to be liberally construed and administered."

We entertain no doubt that there is here a justiciable controversy between the Belmont retiree members of the Association and BRB. We also think that declaratory relief will terminate that controversy, which is considerably more than a "mere difference of opinion or uncertainty over the meaning to be ascribed [to] a statute." See *Department of Community Affairs* v. *Massachusetts State College Bldg. Authy.*, 378 Mass. 418, 422-424 (1979).

2. We move to the question of statutory interpretation presented by this appeal.

(A) It is agreed (1) that in 1970 Belmont accepted G. L. c. 32, §§ 90A and 90C, and made appropriations for all increases adopted by the town pursuant to those sections until 1975, and (2) that funds have not been authorized for further increases since July 1, 1975. Nothing in either § 90A or § 90C requires a town, if it accepts either or both of these sections, to grant any increase under either section. As we read these sections, however, once an increase is granted, the retirement allowance of the affected retiree is permanently increased and must be paid in the year of the increase and in subsequent years, unless an increase under § 102 for any particular year is larger than a 90A/90C increase granted in that year, in which case the § 102 increase is paid instead. See § 102(*a*), last sentence.

Nothing in either § 90A or § 90C contains anything contrary to our conclusion that an increase in a retirement allowance, once granted by a town under either of those sections, becomes thereafter a part of that allowance. A condition providing for a different result (or other conditional provisions) could have been specifically provided in the legislation. See *Opinion of the Justices*, 364 Mass. 847, 866 n.22 (1973). There is no provision for repeal or revocation of any such 90A/90C increase. We regard the absence of such conditions or provisions as indication of a legislative intention that the increased allowances should become vested, once granted, in the year when granted.

(B) We turn now to the interrelation between (1) c. 32, §§ 90A and 90C, and (2) § 102(*a*), as amended by St. 1974,

c. 724, § 1.[10] Section 102(*a*) plainly contemplates an *annual* recomputation of the § 102 increases based, at least roughly, on changes in the consumer price index. In 1974, § 102(*a*) was completely rewritten, and that circumstance makes now irrelevant earlier decisions by CRAB, based on earlier versions of § 102(*a*). See Appendix, part 2, pars. (B) through (D).[11]

Belmont has continued, since the 1974 amendment became effective, to perform an annual comparison between (a) the cumulative aggregate of the § 102 increases granted since 1970 (defined in the statement of agreed facts as "the § 102 calculation") with (b) the cumulative aggregate of the 90A/90C increases granted since 1970. Belmont has withheld from each retiree, who (at any time since 1970) has received a 90A/90C increase, any § 102 increases on the ground that the aggregate 90A/90C increases (past and current) were greater than the cumulative § 102 increases (i.e., the § 102 calculation). We think that this practice runs counter to the plain language of the current 1974 form of § 102(*a*). See the words following the bracketed [X] in that subsection as it appears in Appendix, part 2, par. (A). As we read that language in the 1974 revision, it requires that the annual § 102 increase of each year be added to the basic retirement allowance (as it then exists) to "become the fixed retirement allowance . . . for all future purposes," except that, when a 90A/90C increase in that year is greater than the § 102 increase in that year, the 90A/90C increase (by substitution

---

[10] Subsequent amendments of § 102(*a*) do not appear to affect the method of computation discussed in this opinion.

[11] In 1971, CRAB had ruled, in a case brought by five retirees from Belmont under St. 1967, c. 408, § 2 (see Appendix, part 2, par. [C]), that both the § 102 increase and the 90A/90C increases must be paid without any offset of one type of increase against the other.

In 1975, CRAB ruled, on the basis of the provision of St. 1972, c. 793, § 7 (see Appendix A, part 2, par. [B]), in effect that only the greater of the 90A/90C increases then and theretofore granted and the § 102 increases need be granted. The 1975 CRAB decision was operative until January 1, 1975, the effective date of the 1974 revision of § 102. See St. 1974, c. 724, § 2. It should be noted that the Association's complaint seeks only relief from and after the effective date of the 1974 rewriting of § 102.

for the § 102 increase) is added to the basic retirement allowance (as it then exists) to become a newly determined fixed retirement allowance. This result, we hold, is compelled by the *annual* time frame of the 1974 version of § 102(*a*). The percentage change of the next subsequent annual § 102 increase must be applied to this new fixed retirement allowance (if that increase is larger than the 90A/90C increase of that subsequent year) without comparison with any *prior* 90A/90C increase. Implicit in the language of the later part of the 1974 revision of § 102(*a*) is that a 90A/90C increase becomes a permanent part of the fixed retirement allowance "for all future purposes." Thus, it is to be so regarded for purposes of the application to it of the § 102 percentage increase (or the 90A/90C substitute increase) of the next subsequent year.

We reach this conclusion in part because, in the 1972 version of § 102(*a*), see Appendix, part 2, par. (B), a comparison of § 102 increases with 90A/90C increases was required whenever the basic retirement allowance "*has been* . . . or is increased" under § 90A or § 90C (emphasis supplied). After the 1974 revision of § 102, a comparison was to be made whenever the retirement allowance "*is* increased" under § 90A or § 90C (emphasis supplied). We view this change as emphasizing the *annual* time frame of the adjustments caused by the 1974 revision as contrasted with the comparison under the 1972 revision of § 102 of (a) the cumulative aggregates of the § 102 increases and (b) the cumulative 90A/90C increases. Even minor changes in language may have significance in the interpretation of such statutory revisions. See the discussion in *Bolster* v. *Commissioner of Corps. & Taxn.*, 319 Mass. 81, 84-85 (1946). See also *Marshfield* v. *Springfield,* 337 Mass. 633, 637-638 (1958). The trial judge reached substantially the result which we reach. The declaration ordered by him appears to be consistent with this opinion.

*Judgment affirmed.*

APPENDIX.

CERTAIN RELEVANT PROVISIONS OF
GENERAL LAWS, CHAPTER 32.

PART 1. SECTIONS 90A and 90C

(A) § 90A. [Increasing allowance of former employees retired for accidental disability]

"Any . . . town which accepts the provisions of this section in the manner hereinafter provided may . . ., in the case of a town, by two thirds vote at the annual town meeting, *increase the retirement allowance* of any former employee thereof who has been retired under any provision of this chapter or similar provision of earlier law *on account of injuries sustained or of hazard undergone* in the performance of his duty, to an amount not exceeding one half the rate of regular compensation payable to employees of such . . . town holding similar positions, at the time of increasing such allowance, in the same grade or classification occupied by such former employee at the time of his retirement" (emphasis supplied). [Inserted by St. 1943, c. 452, § 1. The second paragraph of § 90A, inserted by St. 1970, c. 607, § 1, relates to metropolitan police officers, and is not reproduced].

(B) § 90C. [Increasing allowance of former employees retired on superannuation]

"Any . . . town . . . which accepts the provision of this section in the manner hereinafter provided may, . . . in the case of a town by two thirds vote at the annual town meeting, . . . *increase the retirement allowance* of any former employee retired under any provision of this chapter or similar provision of earlier law on account of *superannuation after having served such . . . town . . . for a period of not less than twenty-five years* to an amount not exceeding one half the rate of regular compensation payable to employees of such . . . town . . . holding similar positions at the time of increasing such allowance in the same grade or classification occupied by such former employee at the time of his retirement" (emphasis supplied). [Inserted by St. 1968, c. 138].

PART 2. SECTION 102

(A) § 102. [Cost of living; annual determination of changes; supplemental payments; adjustments in amounts of pensions and annuities]

[Note: Section 102(*a*), quoted below, is from subsection (*a*), as amended through St. 1976, c. 126, § 1. Earlier variations in the subsection, especially in the portion of the subsection following "[X]" below, are mentioned later in this appendix.]

"(*a*)  The life actuary in the division of insurance shall *annually* . . . determine the percentum of change in the average cost of living *for the previous year* as shown by the United States Consumer Price Index . . . .  In the event that . . . [a] comparison indicates an increase in the cost of living of at least three percent, the retirement allowance . . . [of certain former State and municipal employees or their beneficiaries shall . . . be increased by such percentum as the general court shall determine . . . .  [X] The sum of the dollar amount of each cost-of-living increase . . . together with the amount of retirement allowance . . . to which the cost-of-living percentum factor is applied shall become the fixed retirement allowance . . . *for all future purposes including the application of subsequent cost-of-living adjustments* . . .; provided, that whenever the amount of any . . . retirement allowance . . . *is increased* under any general or special law other than . . . a cost-of-living adjustment pursuant to this section, the fixed retirement allowance . . . shall be determined by adding *either* the increase under any general or special law, or the cost-of-living adjustment, whichever is greater, but not both" (emphasis supplied).

(Provisions in § 102, subsection [*a*], pertaining to decreases [not here in issue] in the cost of living have been deleted.  Subsections [*b*] through [*e*] concerning the schedule of making payments and adjustments in a retirement allowance exceeding $7,000 are not reproduced).  It should be noted that the mandatory increase under § 102 in 1974 was made "subject to appropriation" by St. 1975, c. 684, § 25A.  Statute 1976, c. 126, § 1, substituted for the 1975 language the current language allowing the Legislature to set the amount of the percentum increase.  The language following [X] above first appears in St. 1974, c. 724, § 1.

(B)  A predecessor to the language (following [X] above) appeared in St. 1972, c. 793, § 7:  "[The] percentum of change shall . . . be applied to the amount of the . . . retirement allowance . . . as fixed on . . . [December 31, 1969], or to the original amount of any . . . retirement allowance . . . which became effective subsequent to [December 31, 1969]; provided, that in the event the fixed amount of any . . . retirement allowance . . . *has been increased or is increased* under any general or special law . . ., any payments due . . . shall first be based on the . . . retirement allowance . . . as fixed on . . . [December 31, 1969] or on the original amount of the . . . retirement allowance . . . becoming effective after . . . [December 31, 1969], and then reduced by the amount of increase granted under such general or special law" (emphasis supplied).

(C)  Neither the original version of § 102 in St. 1966, c. 661, § 3, nor the first amendment in St. 1967, c. 408, § 2, contained similar provisions.

(D)  A precursor of the contested language (following [X] above), however, is found in St. 1967, c. 408, § 1 (never incorporated in the General Laws), governing the adjustment of all pre-1965 retirement allowances to

amounts reflecting the 1965 cost of living. This 1967 precursor read, "The dollar value of the adjustment which is derived by the application of the [cost-of-living] percentum [to the original retirement allowance] shall be reduced by any increase received . . . under any general law or special act . . . ."