STEVEN PAUL FLANAGAN & others[1] vs. CODY BAKER
& others.[2]

No. 92-P-381.

Essex. May 13, 1993. - October 28, 1993.

Present: PERRETTA, GILLERMAN, & GREENBERG, JJ.

*Negligence*, Violation of statute, Contributory, Comparative, Imputed,
Joint enterprise, Emotional distress, Parent. *Public Policy. Emotional
Distress. Practice, Civil*, Summary judgment.

A fourteen year old boy and his parents were not precluded for public
policy reasons from recovering on claims in negligence against another
boy and his parents by reason of the fact that injuries sustained by the
minor plaintiff in the explosion of a pipe bomb, which was made by the
two boys and another in the basement of the defendants' home, were
directly caused by his own serious criminal conduct. [446-449]
In an action by a fourteen year old boy and his parents for personal inju-
ries sustained by the boy arising from the explosion of a home-made
pipe bomb in the basement of the home of the defendants, another four-
teen year old boy and his parents, summary judgment was correctly
entered in favor of the defendants on claims alleging negligence of the
minor defendant [449-450] and his parents [450], where the defendants
demonstrated that the plaintiffs had no reasonable expectation of prov-
ing elements essential to each of their various claims.

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 2, 1990.

The case was heard, on a motion for summary judgment,
by *John P. Forte*, J., sitting under statutory authority, and
entry of separate and final judgment was ordered by *John T.
Ronan*, J.

*Thornton E. Lallier* for the plaintiffs.
*Mark A. Darling* for the defendants.

---

[1]His mother, Deborah Flanagan, as his next friend and individually, and
his father, James R. Flanagan, individually.
[2]Linda Baker and Alan G. Baker.

PERRETTA, J. On the evening of July 22, 1989, Steven Flanagan, Michael Simonds, and Cody Baker, all fourteen years of age and close friends, were in the basement of Cody's home. Cody's parents believed the boys were repairing Steven's skateboard. They were, however, making a pipe bomb with powder from firecrackers which Michael had brought to the Cody house earlier that day. When Cody's parents decided to retire, his father, Alan, called down to the boys from the first floor, telling them to pick up any mess they had made and to turn off the lights when they were done. After he was assured by the boys that all would be left in order, he joined his wife in their second-floor bedroom. Alan was awakened from his sleep when the bomb exploded. He and Linda, who had been reading, ran toward the cellar and saw the three boys coming up the stairs. Steven's hand was badly injured, and the Bakers rushed him to the hospital. The Flanagans' various claims of negligence against the Bakers were disposed of by the granting of the Bakers' motion for summary judgment.[3] The principal argument on appeal is whether, as the judge determined, the Flanagans are precluded from recovering against any of the Bakers by reason of the fact that Steven's injuries were directly caused by his serious criminal conduct. Concluding that Steven's criminal conduct does not preclude this action against the Bakers but that the Bakers demonstrated that the Flanagans had no reasonable expectation of proving elements essential to each of their various claims, we affirm.

1. *The undisputed facts.* There is no dispute that Steven, Michael, and Cody had made and had exploded pipe bombs on at least two, perhaps five, occasions prior to the day in issue. The bombs were made by taking powder from firecrackers and placing it, with wicks and tissue wadding, into small pieces of pipe which were covered on one end with tape. The pipes were exploded by igniting the wicks and tis-

[3]Counts against the transporter, the seller, and the buyer (Michael Simonds) of the firecrackers remain pending. The claims brought before us by this appeal were certified pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

sue. After the bomb was lit, it either would be left on the ground to explode or thrown into the air.

On the afternoon of July 22, 1989, Michael brought firecrackers to the basement of Cody's house. The three boys then went with Cody's sister to buy a new deck for Steven's damaged skateboard. Upon returning home, they told the Bakers that they were going to the basement, where Alan kept his tools and had a workbench, to work on Steven's skateboard. Instead, they began to make the pipe bomb.[4]

Michael and Cody were unwrapping hundreds of firecrackers, removing the powder, and putting it into a plastic dish. Steven was pouring the powder from the dish into a piece of copper pipe. The pipe was about six inches long and one-half inch in diameter and sealed at one end with tape. Once the powder was in the pipe, Steven added wicks and tissue paper. He next took a pair of pliers and stuck one handle into the pipe. He was banging the pipe on the cement floor to pack the materials more tightly when it exploded in his hand.

2. *Criminal conduct as a bar to recovery.* "It has been established from early times that one who is violating a criminal statute cannot recover for an injury to which his criminality was a directly contributing cause." *Bourne* v. *Whitman*, 209 Mass. 155, 167 (1911). See also *Janusis* v. *Long*, 284 Mass. 403, 410 (1933); *Neil* v. *Holyoke St. Ry.*, 329 Mass. 578, 584 (1952). These cases proceed on the basis that violation of a criminal statute is evidence of negligence "in reference to matters to which the statute relates." *Bourne* v. *Whitman*, 209 Mass. at 167. It logically follows that, where contributory negligence is recognized as a defense in a negligence action, such evidence results in a bar to recovery.

Contributory negligence as a bar to recovery was, however, removed from G. L. c. 231, § 85, by St. 1969, c. 761, § 1, in favor of comparative negligence. Another major revision of § 85 occurred in 1973. In its present form, as amended by St. 1973, c. 1123, § 1, the second paragraph of § 85 provides: "The violation of a criminal statute, ordinance or regu-

---

[4]This activity would appear to violate G. L. c. 148, §§ 35 and 39, and G. L. c. 266, § 102A.

lation by a plaintiff which contributed to said injury, death or damage, shall be considered as evidence of negligence of that plaintiff, but the violation of said statute, ordinance or regulation shall not as a matter of law and for that reason alone, serve to bar a plaintiff from recovery."

Although this paragraph would seem to end the claim that Steven's criminal conduct bars him from recovery for his injuries, the defendants argue that he should not be allowed to avail himself of comparative negligence principles. They stress that § 85 was intended to ameliorate the harsh results of the "outlaw" doctrine, which deprived a lawbreaking plaintiff of all rights against the tortfeasor irrespective of the nature or magnitude of the criminal violation. See Harper & James, Torts § 17.6, at 996-997 (1956). Where, however, their argument continues, a plaintiff's injuries are the direct result of his participation in serious criminal conduct, public policy concerns override comparative negligence principles to defeat any cause of action.

Public policy considerations led the Court of Appeals of New York to conclude, on facts almost identical to those presented in the instant case, that its comparative negligence statute had no application to the rule against recovery for injuries suffered as a direct result of serious illegal conduct because "proof of such an injury would not demonstrate any cause of action cognizable at law." *Barker v. Kallash*, 63 N.Y.2d 19, 29 (1984). As made clear in the three *Barker* opinions (majority, concurring, and dissenting), whether the illegal conduct is sufficiently egregious to defeat a cause of action is a question of law and not fact.

We begin our analysis of the defendants' claim, which seeks support by analogy from *Barker*, by noting from the outset that statutes are themselves statements of public policy. The New York comparative negligence statute, which provides that the "culpable conduct attributable to the claimant . . . shall not bar recovery," see N.Y. Civ. Prac. L. & R. § 1411 (McKinney 1976),[5] did not preclude

---

[5]That statute reads, in pertinent part: "In any action to recover damages for personal injury . . . the culpable conduct attributable to the claimant

the *Barker* result. As construed by the *Barker* majority, 63 N.Y.2d at 28, the term "culpable conduct" includes "tortious conduct generally, breaches of warranty and the like which had previously served to defeat otherwise cognizable causes of action for damages, or bar contribution among defendants."

When so construed, the term "culpable conduct" has sufficient flexibility to include some criminal activity while excluding, for reasons of public policy, "illegal conduct of a serious nature involving risk of physical harm." *Ibid.* The proposition that such conduct can, in certain circumstances, bar recovery also finds support in Restatement (Second) of Torts § 889 comment b (1977).[6]

General Laws c. 231, § 85, however, expressly provides that the "violation of . . . [a criminal] .statute, ordinance or regulation shall not as a matter of law and for that reason alone, serve to bar a plaintiff from recovery." Although the statute appears to comprehend all illegal conduct, we think § 85 could also be construed as allowing for some exceptions. It reasonably could be argued that, by using the words "as a matter of law and for that reason alone," the Legislature intended that a lawbreaker could be barred from recovery where reasons in addition to the criminality of the conduct exist, such as public policy considerations. If § 85 is read in this manner, purpose is given to those words, which might otherwise be surplusage. A "burglar who breaks his leg while descending the cellar stairs, due to the failure of the owner to

---

. . . including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant . . . bears to the culpable conduct which caused the damages."

[6]Section 889 provides that "[o]ne is not barred from recovery for an interference with his legally protected interests merely because at the time of the interference he was committing a tort or a crime. . . ." Comment b, however, excepts from that section the following conduct: "[I]f the injured person has violated a statute designed to prevent a certain type of risk, he is barred from recover for harm caused by violation of the statute if, but only if, the harm resulted from a risk of the type against which the statute was intended to give protection. See §§ 468 and 469."

replace a missing step," *Barker* v. *Kallash*, 63 N.Y.2d at 25-26, could be denied recovery for public policy considerations.

Even were we to conclude that § 85 allows actions by certain lawbreakers to be defeated for public policy reasons, we would not preclude Steven from recovery for his injuries on that basis. Such a preclusion would itself offend a countervailing public policy to the extent it could also protect from possible liability those persons from whom the firecrackers were obtained. See, e.g., *Ashmore* v. *Cleanweld Prods., Inc.*, 66 Or. App. 62 (1983). Further, while Steven's actions in respect to the firecrackers and the pipe bomb constitute violations of numerous statutes, see G. L. c. 148, §§ 35 and 39; G. L. c. 266, § 102A, we think those provisions can be fairly read as intending to protect the general public, which includes the violator, by preventing dangerous situations. The same cannot be said of, for example, G. L. c. 266, § 14, which is intended to protect everyone but the violator, the burglar. See Prosser & Keeton, Torts § 36, at 232 (5th ed. 1984).

Our conclusion, that the plaintiffs' causes of action are not defeated by public policy concerns, requires us to consider whether it was otherwise proper to grant the defendants' motion for summary judgment.

3. *Cody Baker's negligence.* Any attempt to make Cody liable as a social host fails for the reason, if no other, that the undisputed evidence shows that Cody neither provided the firecrackers nor controlled the making of the pipe bomb. See *Ulwick* v. *DeChristopher*, 411 Mass. 401 (1991); *Cremins* v. *Clancy*, 415 Mass. 289 (1993). Even were the theory of joint enterprise applicable to the facts of this case, but see *Stock* v. *Fife*, 13 Mass. App. Ct. 75, 78 & n.5 (1982), and authorities therein cited, that theory would not allow Steven to impute his negligence to Cody for purposes of recovering against him.

Even assuming that the undisputed facts demonstrated the existence of a joint venture, see *id.* at 79, the claim of Steven's parents against Cody for the negligent infliction of emotional distress fails for lack of demonstration of physical

harm. See *Payton* v. *Abbott Labs*, 386 Mass. 540, 557 (1982); *Cusic* v. *Commonwealth*, 412 Mass. 291, 293 (1992). The clinical psychologist's statement that, "I believe that they sustained physical harm manifest[ed] by objective symptomology," as set forth in a report not in the record, was insufficient to defeat summary judgment. Compare *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129 (1993).

4. *Linda and Alan Baker's negligence.* There is no dispute that Cody's parents had no knowledge of the boys' activity and that they believed that the boys were repairing Steven's skateboard. The fact that Cody, four years earlier, had been allowed by his parents to light a firecracker in their presence does not demonstrate the existence of a triable issue of fact on the claims based upon negligent parental supervision. See *Watson* v. *Salvoni*, 27 Mass. App. Ct. 735, 737-738 (1989). That it was the opinion of the plaintiffs' experts that Cody's parents were negligent in their supervision does not change our conclusion. See *Baptiste* v. *Sheriff of Bristol County*, 35 Mass. App. Ct. 119, 126 (1993), and cases therein cited. All that remains for imposing liability upon Cody's parents is the sole, and therefore insufficient, fact of their ownership and control over the premises. See *Andrade* v. *Baptiste*, 411 Mass. 560 (1992); *Anthony H.* v. *John G.*, 415 Mass. 196, 200-201 (1993).

*Judgment affirmed.*