ELIZABETH RYAN, administratrix,[1] *vs.* PATRICIA A. HUGHES-ORTIZ, administratrix,[2] & another.[3]

No. 10-P-202.

Middlesex. December 2, 2010. - January 6, 2012.

Present: TRAINOR, KATZMANN, & RUBIN, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Violation of statute, Comparative. *Public Policy. Gun Control Act of 1968. Protection of Lawful Commerce in Arms Act. Statute,* Construction. *Words,* "Qualified civil liability action," "Criminal or unlawful misuse," "Design defect exception."

In a civil action brought by the administratrix of an estate arising from the decedent's accidental death from a self-inflicted gunshot wound, the judge did not err in granting summary judgment in favor of the owner of the firearm on the plaintiff's claims of negligence and wrongful death, where public policy dictated that the decedent's own criminal conduct act as a bar to recovery, i.e., the fact that the decedent, in an affirmative act of theft, stole the firearm from the owner's home, and the fact that the decedent, a convicted felon, acted in violation of a Federal statute by possessing firearms and ammunition [93-97]; further, the judge did not err in granting summary judgment in favor of the defendant firearms manufacturer, where the plaintiff's claims against the manufacturer constituted a qualified civil liability action (i.e., one resulting from the criminal misuse of a firearm), for which the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903, provided immunity [97-101].

CIVIL ACTION commenced in the Superior Court Department on October 29, 2003.

Motions for summary judgment and to strike deposition testimony and portions of statements of facts were heard by *S. Jane Haggerty,* J.

*J. Kenneth Griffin* for the plaintiff.

*Mark C. Darling* for Patricia A. Hughes-Ortiz.

---

[1] Of the estate of Charles D. Milot.

[2] Of the estate of Thomas Hughes. Hughes was the original defendant in the suit. During the pendency of this action, Hughes died, and his daughter, Hughes-Ortiz, was substituted as a party defendant.

[3] Glock, Inc.

*John F. Renzulli*, of New York (*Patricia A. Hartnett* with him) for Glock, Inc.

KATZMANN, J. This matter arises out of Charles Milot's accidental death from a gunshot wound. Thomas Hughes owned the weapon involved, and Glock, Inc. (Glock), was the manufacturer of the weapon. Elizabeth Ryan (plaintiff), the administratrix of the Milot estate,[4] filed a complaint in Superior Court asserting claims of negligence and wrongful death against Hughes. The plaintiff also asserted claims of breach of the implied warranty of merchantability, negligence, wrongful death, and unfair and deceptive acts and practices against Glock. The defendants subsequently moved for summary judgment. The plaintiff filed oppositions to the defendants' motions for summary judgment and also filed motions to strike portions of the deposition testimony and certain paragraphs from the defendants' statements of undisputed fact. On October 8, 2009, after a hearing on the motions, the motion judge allowed both defendants' motions for summary judgment. This appeal followed. We affirm, and consider issues of negligence, and, in a matter of first impression in Massachusetts, the application of the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903 (2006).

*Background.* In November, 2001, Milot was released on probation from the Billerica house of correction after an incarceration of about eighteen months. Hughes testified in his deposition that he helped Milot to get reestablished by lending him a small amount of money and giving him odd jobs to do around his house. Hughes knew Milot through Milot's sister, Deborah McConologue, and her husband, whom Hughes had known for twenty years. Hughes was aware of Milot's history of substance abuse and prior depression, and the loss of Milot's driver's license.

In his deposition, Hughes testified that he owned several firearms that he stored in a chest in a second-floor bedroom. The bedroom was kept locked and had been outfitted with barred windows. Hughes testified that he kept the keys to this bedroom in a vase on top of the fireplace.

One of the firearms that Hughes owned was a Glock pistol. Hughes purchased the Glock pistol and its storage container in

---

[4]Ryan is the ex-wife of Milot and the mother of the couple's son, Kyle Thomas Ryan, who is the sole heir of the estate of Charles Milot.

2000 from the widow of a former Boston police officer. Hughes testified in his deposition that he stored the unloaded pistol as well as its magazine in its storage container in a chest drawer in the same bedroom where his other guns were stored. He further testified that he had never touched, loaded, or fired the weapon after purchasing it.[5]

In her deposition testimony, McConologue reported that, at a family event held on February 23, 2002, Milot showed her two handguns and two loose cartridges. McConologue could not describe the guns and did not know what the models were. McConologue testified that when she asked Milot where he had obtained the guns, Milot told her that he got them from Hughes's house. She further testified that Milot told her that he found the key in Hughes's house for the locked bedroom door, unlocked the door, and found the guns, ultimately taking them from Hughes's home. McConologue testified that she advised her brother to call Hughes and return the pistols to him, that Milot did not want to tell Hughes that he had taken the guns, but that Milot agreed to put them back the way he had found them.

On February 25, 2002, Hughes picked up Milot around 7:00 A.M. and brought Milot to his house. Once they were at Hughes's house, Hughes showed Milot the front doorbell that he wanted Milot to repair. Hughes then left his house to run some errands, returning to check on Milot's progress about two hours later. When Hughes returned home, he found Milot's body covered with blood in the front doorway of his home. The police and an ambulance were called and upon their arrival, Milot was pronounced dead. An autopsy was performed, and it was determined that Milot had suffered a gunshot wound to his left thigh which severed the femoral artery and caused Milot to bleed to death.

Once they arrived on the scene, police officers followed a trail of blood to a second-floor bedroom. Police found a Glock nine millimeter Model 17 handgun in a plastic storage case on the bed. There was a discharged cartridge in the chamber of the pistol, and police found powder burns on the bedspread in that

[5]On the day of Milot's death, Hughes signed a statement for the police in which he reported that "the [Glock pistol] was in it's [*sic*] case. I can't remember if it was loaded or not."

bedroom as well as pieces of plastic from the storage case on the floor by the bed. Police speculated that "[a]pparently the victim was attempting to put the gun back in the container when the round was fired, striking the victim in the upper left leg. . . . The victim apparently walked out of the bedroom, down the front stairs, into the living room, used the telephone and walked to the front door where he collapsed and died."

*Discussion.* 1. *Standard of review.* Under the familiar standard, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories . . . [and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). This court reviews a grant of summary judgment de novo and examines "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Humphrey* v. *Byron,* 447 Mass. 322, 325 (2006), quoting from *Anderson St. Assocs.* v. *Boston,* 442 Mass. 812, 816 (2004).

2. *Ryan's claims against Hughes-Ortiz.* The plaintiff appeals from the motion judge's decision granting summary judgment on her negligence and wrongful death[6] claims against Hughes-Ortiz. The motion judge found that "Hughes owed Milot no duty of care and, even if he had, any negligence on the part of Hughes did not cause Milot's death." We need not reach the issues of duty and causation, however, because we conclude that the plaintiff's claims against Hughes-Ortiz are barred by Milot's criminal conduct.

The facts reveal that Milot, through an affirmative act of theft in violation of G. L. c. 266, § 30, stole a firearm from the home of Hughes, the owner, who had placed trust in him. We conclude that public policy dictates that Milot's criminal conduct

---

[6]In order to succeed on her wrongful death claim, the plaintiff would need to establish either that Hughes was negligent, or, in the alternative, that Hughes "by willful, wanton or reckless act cause[d] the death of [Milot]." G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 1. The motion judge did not address the plaintiff's wrongful death claim against Hughes-Ortiz under the wilful, wanton, or reckless act theory, and the plaintiff does not argue on appeal that such omission was error. We thus consider only the negligence theory of wrongful death in determining whether the judge erred in granting summary judgment to Hughes-Ortiz on the plaintiff's wrongful death claim.

acts as a bar to recovery. See, e.g., *Flanagan* v. *Baker*, 35 Mass. App. Ct. 444, 448-449 (1993), quoting from *Barker* v. *Kallash*, 63 N.Y.2d 19, 25-26 (1984) ("A 'burglar who breaks his leg while descending the cellar stairs, due to the failure of the owner to replace a missing step' . . . could be denied recovery for public policy considerations"); *Driscoll* v. *Board of Trustees of Milton Academy*, 70 Mass. App. Ct. 285, 291-292 (2007) (student who committed statutory rape violated the law as well as "social values and customs" and "may not recover in tort against the school for his own sexual misconduct"). See also *Flanagan* v. *Baker*, *supra* (suggesting that, notwithstanding amendments to the comparative negligence statute, G. L. c. 231, § 85, as amended through St. 1973, c. 1123, § 1, civil actions "by certain lawbreakers" may be "defeated for public policy reasons"). Compare *Jupin* v. *Kask*, 447 Mass. 141, 147-148 (2006) (acknowledging there could be a "public policy justification" for refusing to impose a duty of care on the defendant homeowner, but declining to apply such an exception where the third-party plaintiff was killed after a household member with free access to the home took a weapon stored in the home).

The comparative negligence statute, G. L. c. 231, § 85, does not require a different result. In providing that "[t]he violation of a criminal statute . . . by a plaintiff which contributed to [the plaintiff's] . . . death . . . shall be considered as evidence of negligence of that plaintiff, but the violation of said statute . . . shall not as a matter of law and for that reason alone, serve to bar a plaintiff from recovery," § 85 nevertheless allows for exceptions where, as here, the decision to bar the cause of action is based not only on the plaintiff's violation of a criminal statute, but also on public policy considerations. See *Flanagan* v. *Baker*, 35 Mass. App. Ct. at 448. We therefore conclude that the judge did not err in granting summary judgment to Hughes-Ortiz.

Our conclusion is further buttressed by Restatement (Second) of Torts, and Milot's criminal acts — stealth of the pistol, and violation of 18 U.S.C. § 922(g)(1) (2006),[7] which bars the pos-

---

[7]In pertinent part, 18 U.S.C. § 922 provides,

"(g) It shall be unlawful for any person —

"(1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year;

session of firearms and ammunition by convicted felons. It is clear that, at a minimum, Milot stole and had possession of a firearm and ammunition after having been convicted of the felony of assault and battery by means of a dangerous weapon.[8,9] Milot's actions constitute the sort of conduct described in Restatement

> ". . .

> "to . . . possess . . . any firearm or ammunition . . . ."

Section 921(a)(20) of Title 18 provides, in pertinent part,

> "The term 'crime punishable by imprisonment for a term exceeding one year' does not include —

> ". . .

> "(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

> "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."

[8]We take judicial notice of the fact that Milot had previously been convicted of assault and battery by means of a dangerous weapon (a meat cleaver), G. L. c. 265, § 15A. See *Commonwealth* v. *Fallon*, 53 Mass. App. Ct. 473, 475 (2001) (court took judicial notice of defendant's convictions); *Commonwealth* v. *Williams*, 60 Mass. App. Ct. 331, 331 n.1 (2004) (same). See also *Jackson* v. *Longcope*, 394 Mass. 577, 580 n.2 (1985) ("It is proper on a motion for summary judgment to recognize those facts of which a judge may take judicial notice, including criminal cases involving a party"). "A court may take judicial notice at any stage of the proceeding, whether requested or not." Mass.G.Evid. § 201(c) (2011). See *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69 n.9 (1997) ("judicial notice can be taken by trial and appellate courts").

Notwithstanding the fact that Milot was tried in the District Court and was sentenced to a term in the house of correction, for all practical purposes he was, nevertheless, convicted of a felony. "[A]ssault and battery by means of a dangerous weapon[] is punishable by up to ten years in the State prison," *Commonwealth* v. *Smith*, 444 Mass. 497, 499-500 (2005), and is deemed a felony. See *id.* at 498-500 (rejecting the defendant's argument that because he was charged by complaint and sentenced in the District Court to two years in a house of correction, he did not meet the statutory criterion of being convicted of an offense "punishable by imprisonment in the [S]tate prison"). See generally *Commonwealth* v. *Ware*, 75 Mass. App. Ct. 220, 223-224 (2009); *id.* at 224, quoting from *United States* v. *Sousa*, 468 F.3d 42, 45 (1st Cir. 2006) ("defendant's prior conviction for assault with dangerous weapon was felony, and thus was predicate offense under Federal law prohibiting felon from being in possession of firearm, despite fact that defendant was prosecuted in Municipal

(Second) of Torts § 889 comment b (1977), whereby a plaintiff is "barred from recovery for harm caused by violation of [a] statute . . . [where] the harm resulted from a risk of the type against which the statute was intended to give protection." See § 889 comment b, *supra*, illustration 5; *Flanagan* v. *Baker*, 35 Mass. App. Ct. at 448 & n.6.

As has been noted by the United States Supreme Court, in enacting the Gun Control Act of 1968 (which includes 18 U.S.C. § 922[g][1], of which Milot was in violation; see note 7, *supra*), Congress sought to

> "curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'
>
> "In order to accomplish this goal, Congress obviously determined that firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them."

*Dickerson* v. *New Banner Inst., Inc.*, 460 U.S. 103, 118-119 (1983), quoting from *Huddleston* v. *United States*, 415 U.S. 814, 824 (1974). See *Small* v. *United States*, 544 U.S. 385, 393-394 (2005) (citing cases). See also *Barrett* v. *United States*, 423 U.S. 212, 218 (1976) ("Congress . . . sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous"). See generally *District of Columbia* v. *Heller*, 554 U.S. 570, 626 (2008) (in determining that a District of Columbia ban on handguns in the home violated the right to keep and bear arms protected by the Second Amend-

Court and could not have been sentenced to State prison, as required for crime to be considered felony; crime charged carried potential for State prison term of not more than five years").

[9]At the time he discharged the Glock pistol, Milot was also in violation of G. L. c. 140, § 129C. The plaintiff does not dispute that Milot lacked a license to carry or a firearm identification card, as required by § 129C, but instead argues that these facts are irrelevant because a jury might find that Milot's "handling of the [pistol was] for a lawful purpose," which would make Milot exempt from the requirements of § 129C. See G. L. c. 140, § 129C(*m*). We disagree. No reasonable jury could find that, in returning the gun to its case, Milot was handling the pistol for a "lawful purpose," where he was in possession of the pistol without Hughes's permission.

ment to the United States Constitution, the Supreme Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill"); *McDonald* v. *Chicago*, 130 S. Ct. 3020, 3044 (2010) ("the Second Amendment protects a personal right to keep and bear arms for *lawful* purposes" [emphasis supplied]).

Section 889 of the Restatement thus supports the conclusion that, in light of Milot's theft of the pistol and his violation of 18 U.S.C. § 922(g)(1), the plaintiff's claims against Hughes-Ortiz are barred.

3. *Ryan's claims against Glock.* The plaintiff brought claims of breach of the implied warranty of merchantability, negligence, wrongful death, and unfair and deceptive acts and practices against Glock. These claims relate to both the Glock Model 17 pistol (Glock pistol) and the pistol's storage case (gun case). The judge granted summary judgment on all claims after finding that the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903 (2006) (PLCAA or Act) barred the plaintiff's claims against Glock. The plaintiff appeals, arguing that, on the facts in this case, the PLCAA does not apply.

The gun case at issue here has a post with a protruding wing or flange in the center. This design means that the Glock pistol's trigger and trigger safety must be fully rearward in order to fit into the case. When the Glock pistol is cocked and ready to fire, the trigger moves to the forward position with the trigger lock positively protruding. Once cocked, the trigger and trigger safety would need to be moved fully rearward again in order to fit over the post in the gun case. These are the same steps that would need to be taken to fire the Glock pistol.

An orange sticker inside the gun case reads, "CAUTION: PRIOR TO PLACING PISTOL INTO CONTAINER UNLOAD PISTOL. FOR UNLOADING PROCEDURES PLEASE REFER TO GLOCK INSTRUCTION MANUAL." In order to unload the Glock pistol, the magazine must be removed, any round in the chamber must be ejected, the chamber should be checked to ensure that no round remains in the chamber, and the pistol should be cocked once more and the trigger depressed while pointing the gun in a safe direction.

The plaintiff alleges that the Glock pistol and gun case "were

defective because the [gun] case caused the loaded Glock . . . pistol . . . to discharge through the case and because the pistol was likely to discharge unintendedly" and that "Glock so negligently and carelessly designed the Glock Model 17 pistol and storage case . . . that the pistol discharged into the Decedent's body mortally wounding the Decedent." The plaintiff's claims of breach of the implied warranty of merchantability and design defect are thus based on the interaction between the Glock pistol and the gun case. We now consider whether the claims, as formulated by the plaintiff, are barred by the PLCAA.

The PLCAA was enacted on October 26, 2005, and provides immunity to firearms manufacturers and dealers from any lawsuit, pending or otherwise, fitting the Act's definition of a "qualified civil liability action." 15 U.S.C. §§ 7902-7903 (2006). See *Ileto* v. *Glock, Inc.*, 421 F. Supp. 2d 1274, 1283 (C.D. Cal. 2006), aff'd, 565 F.3d 1126 (9th Cir. 2009), cert. denied, 130 S. Ct. 3320 (2010). The proper analysis for determining the applicability of the PLCAA is two-fold. First, we must determine whether the lawsuit in question is a "qualified civil liability action." Next, we must determine whether any of the PLCAA's six exceptions to this definition apply. Should the current suit fail to meet the definition of a "qualified civil liability action" or should any of the six exceptions apply, the plaintiff's claims against Glock would not automatically be dismissed. See *City of New York* v. *Beretta U.S.A. Corp.*, 524 F.3d 384, 398-399 (2d Cir. 2008), cert. denied, 556 U.S. 1104 (2009); *Ileto* v. *Glock, Inc. supra*; *City of New York* v. *A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 349-353 (E.D.N.Y. 2007); *Estate of Charlot* v. *Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 180 (D.D.C. 2009); *Adames* v. *Sheahan*, 233 Ill. 2d 276, 308-313, cert. denied sub nom. *Adames* v. *Beretta U.S.A. Corp.*, 130 S. Ct. 1014 (2009).

In pertinent part, as defined by the Act, a "qualified civil liability action"

> "means a civil action or proceeding . . . brought by any person against a manufacturer . . . of a qualified product, . . . for damages, punitive damages, . . . abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . . ."

15 U.S.C. § 7903(5)(A). The present suit is a "civil action or proceeding" brought by a "person" (Ryan) against a "manufacturer" (Glock, Inc.) for "damages." The parties do not dispute that the Glock pistol is a "firearm"[10] and therefore a "qualified product"[11] under the PLCAA. On appeal, the plaintiff argues for the first time that the allowance of Glock's motion for summary judgment should be reversed because the gun case is not a qualified product, and thus the PLCAA does not bar her suit against Glock. As this argument was not made in the trial court in the first instance, the argument is waived. See *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006) ("The plaintiffs never put the judge on notice that they opposed summary judgment on this theory. . . . Thus, we deem the issue waived"). We express no opinion whether the PLCAA would preclude or permit a future plaintiff to bring claims involving the interaction between qualified and nonqualified products.

The final element of the definition of a "qualified civil liability action" is that the civil action "result[ed] from the criminal or unlawful misuse of a qualified product by the person or a third party." 15 U.S.C. § 7903(5)(A). The Act defines "unlawful misuse" to mean "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9). The plaintiff argues that "[t]he PLCAA is inapplicable because there was no evidence supporting the conclusion that the gun was misused, whether criminally, unlawfully or otherwise." While it is true that no criminal charges were ever brought against Milot in connection with this incident, compare *Adames* v. *Sheahan*, 233 Ill. 2d at 309-310 (adjudication of delinquency), the PLCAA does not require a criminal conviction in order for an activity to qualify as "criminal or unlawful misuse." *Id.* at 310-311. Here, in violation of 18 U.S.C.

---

[10]Under 18 U.S.C. § 921(a)(3)(A) & (B) (2006), a firearm is defined as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or "the frame or receiver of any such weapon."

[11]The PLCAA defines "qualified product" as "a firearm (as defined in subparagraph [A] or [B] of section 921[a][3] of Title 18), including any antique firearm (as defined in section 921[a][16] of such title), or ammunition (as defined in section 921[a][17][A] of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

§ 922(g)(1), Milot possessed a firearm and ammunition after having been convicted of a felony. See notes 7 & 8, *supra.*[12] Since the civil action at issue here resulted from Milot's possession of the Glock pistol, which constituted "criminal or unlawful misuse" due to Milot's prior felony conviction, this is a "qualified civil liability action."

The plaintiff argues that even if this is a "qualified civil liability action," the PLCAA should not operate to foreclose her claims against Glock because her claims fall under the PLCAA's "Design Defect Exception."[13] See *Ileto* v. *Glock, Inc.*, 421 F. Supp. 2d at 1283-1284 ("[a]ssuming a given action against a firearms manufacturer or dealer falls within one of these exceptions, the action can proceed"). The design defect exception provides that a "qualified civil liability action" does not include:

> "an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, *except that where the discharge of the product was caused by a volitional act that constituted a criminal offense*, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage" (emphasis supplied).

15 U.S.C. § 7903(5)(A)(v).

Although, as noted above, Milot was not convicted of a criminal offense in connection with this accident, "the exception in section 7903(5)(A)(v) does not require a criminal conviction. The statute requires only that the volitional act constitute a criminal offense." *Adames* v. *Sheahan*, 233 Ill. 2d at 313. Here, as we have discussed, the relevant volitional act that caused the gun's discharge was Milot's unlawful possession of the Glock pistol. Milot's volitional act constituted a criminal offense and the design defect exception is therefore not applicable.

---

[12] As noted in note 9, *supra*, Milot was also in violation of G. L. c. 140, § 129C.

[13] Although the Act articulates six exceptions, see 15 U.S.C. § 7903(5)(A)(i)-(vi), the plaintiff raises only the possibility that her claims survive due to the design defect exception. We thus need not examine any of the other exceptions to the PLCAA.

Thus, for the reasons outlined above we conclude that the plaintiff's claims against Glock were barred by the PLCAA.[14]

*Judgment affirmed.*

·

---

[14]The plaintiff argues on appeal that the judge abused her discretion in denying the plaintiff's motions to strike parts of the deposition testimony of Mc-Conologue and Hughes as well as portions of the defendants' statements of facts. The judge did not state any reason for denying these motions. We discern no abuse of discretion. See *Chan* v. *Chen,* 70 Mass. App. Ct. 79, 84 (2007).