J-E02008-21

2022 PA Super 140

| | | |
|---|---|---|
| MARK AND LEAH GUSTAFSON, INDIVIDUALLY AND AS ADMINISTRATORS AND PERSONAL REPRESENTATIVES OF THE ESTATE OF JAMES ROBERT ("J.R.") GUSTAFSON | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| | : | No. 207 WDA 2019 |
| v. | : : : | |
| SPRINGFIELD, INC. D/B/A SPRINGFIELD ARMORY AND SALOOM DEPARTMENT STORE AND SALOOM DEPT. STORE, LLC D/B/A SALOOM DEPARTMENT STORE THE UNITED STATES OF AMERICA | : : : : : : : : | |
| Intervenor | : | |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Westmoreland County
Civil Division at No. 1126 of 2018

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON, J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

DISSENTING OPINION BY MURRAY, J.:      **FILED: AUGUST 12, 2022**

After careful review, I agree with Appellees' argument that the Gustafsons' claims are barred by the federal Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C.A. §§ 7901-7903. I therefore dissent.

**Procedural and Factual History**

The facts bear repeating. As the trial court summarized,

on March 20, 2016, ... then thirteen-year-old [J.R.] Gustafson, was killed by a model XD-9 semi-automatic handgun ("subject handgun") manufactured by [Appellee] Springfield, Inc. ("Springfield") and sold by [Appellee] Saloom Department Store ("Saloom"). J.R. was visiting the home of a friend with another fourteen-year-old friend (the "Juvenile Delinquent") when the Juvenile Delinquent [was given] the unsecured subject handgun in the home. The Juvenile Delinquent believed that the subject handgun was unloaded because the magazine had been removed; however, a live round remained in the chamber. The Juvenile Delinquent pointed the subject handgun at J.R. and pulled the trigger. The subject handgun fired and J.R. was killed. The Juvenile Delinquent subsequently pled guilty to involuntary manslaughter in a delinquency proceeding in juvenile court.

Trial Court Opinion, 1/15/19, at 2.

In addition to initiating the proceeding against the Juvenile Delinquent, the Commonwealth filed criminal charges against three adults in connection with J.R.'s death. Christopher Lewis pled guilty to illegally selling the gun to Joshua Hudec, who pled guilty to child endangerment for leaving the gun unsecured in the home. Brooke Nelson, who was babysitting young children in the home when J.R. was shot, pled guilty to child endangerment, reckless endangerment, and a weapons offense for providing the gun to the Juvenile Delinquent.

In their civil complaint, "comprised of survival and wrongful death claims" against Appellees, the Gustafsons alleged "negligent design and sale as well as negligent warnings and marketing with regard to [the] manufacture and sale of the" handgun. Trial Court Opinion, 1/15/19, at 2. Appellees, in

their preliminary objections, argued the Gustafsons failed to plead a valid cause of action because the claims are barred by the PLCAA. I agree.

On August 7, 2018, the Gustafsons replied to the preliminary objections, averring that the PLCAA did not bar their claims, and in the alternative, challenging the constitutionality of the PLCAA. Answer to Preliminary Objections, 8/7/18, at 2-4. The trial court sustained Appellees' preliminary objections and dismissed the Gustafsons' complaint with prejudice. Trial Court Opinion, 1/15/19, at 16. The trial court reasoned that the Juvenile Delinquent's act "amounts to . . . committing a criminal act and is thus applicable under the 'criminal misuse' portion of the PLCAA." *Id.* at 8. According to the trial court, the gun was discharged as the result of a volitional act that constituted a criminal offense, even though the discharge was unintentional. *See id.* The trial court concluded, "the PLCAA is in no way in violation of the United States Constitution." *Id.* at 16.

## Standard of Review

As the Pennsylvania Supreme Court has explained,

[o]ur standard of review in [an] appeal arising from an order sustaining preliminary objections in the nature of a demurrer is *de novo*, and our scope of review is plenary. We recognize a demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law; we must therefore accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. A preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.

*Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (citations omitted).

- 3 -

**The Gustafsons' Claims**

In their supplemental brief, the Gustafsons claim the PLCAA infringes on the rights reserved to the states under the Tenth Amendment to the United States Constitution. Gustafsons' Supplemental Brief at 4. The Gustafsons argue the PLCAA exceeds the authority vested in the federal government under the Commerce Clause of the United States Constitution. *Id.* at 5. They assert the PLCAA targets "the states themselves, rather than any private individuals or any arguably commercial activity, by dictating to the states how they must exercise their lawmaking functions." *Id.* at 6.

The Gustafsons further argue that under federalism and statutory construction principles, the PLCAA does not apply to their products liability action. *Id.* at 7. Specifically, the Gustafsons assert there was no disqualifying "criminal" or "volitional" act precluding their tort claims. *Id.* They direct our attention to Congress's narrow reference to "criminal" acts as disqualifying state products liability actions. *Id.* at 11. According to the Gustafsons, Congress intentionally restricted products liability actions involving "criminal" acts, but not "unlawful" acts. *Id.* at 12. The Gustafsons also argue that federalism precedent requires that their action be allowed to proceed. *Id.* at 7.

**I.    Does the PLCAA Bar Appellants' Claim?**

**Federal Preemption**

When addressing questions of express or implied preemption, we begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." **Altria Grp., Inc. v. Good**, 555 U.S. 70, 77 (2008).

I agree with Judge Kunselman's Opinion in Support of Per Curiam Order to Reverse (Kunselman Op.) that the PLCAA preempts state common law. **See** Kunselman Op. at 11.

> [I]n all preemption cases, and particularly in those in which Congress has legislated … in a field in which the States have traditionally occupied, … we start with the assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

**Wyeth v. Levine**, 555 U.S. 555, 565 (2009) (quotation marks omitted).

The doctrine of preemption is grounded in the United States Constitution:

> The Supremacy Clause of the United States Constitution prohibits states from enacting laws that are contrary to the laws of our federal government: "This Constitution and the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It is through this clause that the United States Congress may preempt state law.

**Office of Disciplinary Counsel v. Marcone**, 855 A.2d 654, 664 (Pa. 2004). If Congress "enacts a law that imposes restrictions or confers rights on private actors," and "a state law confers rights or imposes restrictions that conflict with the federal law," then "the federal law takes precedence and the state

law is preempted." ***Murphy v. Nat'l Collegiate Athletic Ass'n***, --- U.S. --- , 138 S. Ct. 1461, 1480 (2018).

The United States Supreme Court has set forth "two cornerstones" of preemption jurisprudence. ***Wyeth***, 555 U.S. at 565. First, the "ultimate touchstone" is "the purpose of Congress." ***Id.*** (citation omitted). Second, the Court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," especially when the case involves a "field which the states have traditionally occupied." ***Id.*** (citation omitted).

The United States Supreme Court recognizes three types of federal preemption:

> (1) [E]xpress preemption, where the federal law includes a provision that expressly preempts the state statute; (2) field preemption, where "Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law[]"; and (3) conflict preemption, where the state statute either precludes compliance with the federal law or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"

***Krentz v. CONRAIL***, 910 A.2d 20, 31-32 (Pa. 2006) (quoting ***Marcone***, 855 A.2d at 664 (internal citations omitted)).

The United States Supreme Court adheres to "the cardinal rule that a statute is to be read as a whole … since the meaning of statutory language, plain or not, depends on context." ***King v. St. Vincent's Hosp.***, 502 U.S. 215, 221 (1991) (citation omitted).

Our inquiry into the scope of a statute's pre-emptive effect is guided by the rule that "'[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." ***Medtronic, Inc. v. Lohr***, 518 U.S. 470, 485, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) (quoting ***Retail Clerks v. Schermerhorn***, 375 U.S. 96, 103, 84 S. Ct. 219, 11 L. Ed. 2d 179 (1963)). Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. ***See Jones v. Rath Packing Co.***, 430 U.S. 519, 525, 97 S. Ct. 1305, 51 L. Ed. 2d 604 (1977). If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains.

***Altria Grp.***, 555 U.S. at 76. The purpose and scope of preemption is "primarily [] discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." ***Medtronic***, 518 U.S. at 486.

The parties do not dispute that the PLCAA expressly protects firearms and ammunition sellers from liability for "harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended," while "[p]reserv[ing] and protect[ing] … State sovereignty[.]" 15 U.S.C.A. §§ 7901(a)(5), (6). As discussed *infra*, the PLCAA's preemption is accomplished pursuant to Congress's constitutional power to regulate interstate commerce. ***See*** 15 U.S.C.A. § 7901(b)(4) ("The purpose[ ] of this chapter ... [includes the prevention] of such lawsuits to impose unreasonable burdens on interstate and foreign commerce"); ***United States v. Lopez***, 514 U.S. 549, 561-62 (1995) (the Commerce Clause authorizes congressional regulation of firearms possession).

Instantly, where there is express preemption, our role is to construe the scope of the preemption, considering the congressional purpose of the statute, as revealed by the text and statutory framework. *Altria Group*, 555 U.S. at 77; *Medtronic*, 518 U.S. at 485-86. While we factor the presumption against preemption of the states in our analysis, *Medtronic*, 518 U.S. at 485, the presumption is merely one factor in the Court's analysis. It will not override the intended purpose of Congress as revealed by the text and framework of the PLCAA. *Altria Group*, 555 U.S. at 77.

The PLCAA expressly bars any civil cause of action, regardless of the underlying theory, when a plaintiff's injury results from "the criminal or unlawful misuse" of a person or a third party, unless a specific exception applies. 15 U.S.C.A. §§ 7902(a), 7903(5)(A). The Gustafsons rely on the PLCAA's purposes section, which states that the PLCAA was passed to "prohibit causes of action for the harm **solely** caused by the criminal or unlawful misuse of firearms." 15 U.S.C.A. § 7901(b)(1) (emphasis added). A similar statement in the PLCAA's findings section decries the "possibility of imposing liability … for harm that is **solely** caused by others." 15 U.S.C.A. § 7901(a)(6) (emphasis added).

Contrary to the Gustafsons' assertion, the purpose section of the PLCAA does not redefine the plain language of the statute. Rather, we must "start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,

238 (1989) (quoting **Richards v. United States**, 369 U.S. 1, 9 (1962)). We look to the intent of Congress where the language is not "dispositive." **Adams Fruit Co. v. Barrett**, 494 U.S. 638, 642 (1990). Here, the PLCAA's statement of purpose does not supplant the PLCAA's express preemption of qualified civil liability actions against firearms sellers, including those raised by the Gustafsons. Where the terms of a statute are unambiguous, judicial inquiry is complete. **Id.**; **Rubin v. United States**, 449 U.S. 424, 430 (1981).

Finally, we are not persuaded by the Gustafsons' reliance on the Supreme Court decisions in **Gregory v. Ashcroft**, 501 U.S. 452 (1991), and **Bond v. United States**, 572 U.S. 844 (2014). **See** Gustafsons' Supplemental Brief at 20-21. **Gregory** and **Bond** involve **implied** preemption. In both cases, the Supreme Court held that expansive statutory definitions should be narrowly construed to avoid excessive federal intrusion into traditional issues of state concern. **Gregory**, 501 U.S. at 460; **Bond**, 572 U.S. at 856-57, 861-64. Instantly, the trial court concluded,

> [t]he present analysis does not even reach the **Gregory** and **Bond** constitutional avoidance doctrine, because the text of the statute makes manifest Congress' intent to preempt state tort law. Congress explicitly stated in the PLCAA that it intended to "prohibit causes of action" as defined in the PLCAA to "prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce." 15 U.S.C. § 7901. Throughout the PLCAA, Congress unambiguously and without question states its intention to definitively preempt state tort law.

Trial Court Opinion, 1/15/19, at 4. Because Congress expressly and unambiguously exercised its constitutionally delegated authority to preempt

- 9 -

state law negligence actions against sellers of firearms, there is no need to employ a narrow construction to avoid federalism issues.

### Statutory Interpretation

Alternatively, the Gustafsons maintain their action does not fall under the scope of the PLCAA, stating that it "falls within [the] PLCAA's product liability exception (§ 7032(5)(A)(v)) because there was no disqualifying 'volitional' and 'criminal' act and it falls outside the scope of the general definition of a 'qualified civil liability action' in § 7903(5)(A)."[1] Gustafsons' Supp. Brief at 7; *see also id.* at 7-17.

Judge Kunselman disagrees with the Gustafsons, stating "it is undisputed that the Gustafsons filed a civil action against a gun manufacturer and/or seller and the damages arose from the criminal and/or unlawful misuse of a firearm by a third party." Kunselman Op. at 6. Judge Kunselman also concludes this case does not fall within the product liability exception because, "the criminal act that triggers a 'qualified-civil-liability action' under PLCAA will *always* be a volitional, criminal act that nullifies exception (v)." *Id.* at 10 (emphasis in original).

---

[1] As noted, Section 7903(5)(A)(v) exempts product liability cases from the PLCAA except "where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage[.]" 15 U.S.C.A. § 7903(5)(A)(v).

In his Opinion in Support of Per Curiam Order to Reverse, President Judge Emeritus John Bender (Bender Opinion) disagrees, stating, "I believe the exceptional circumstances of this case call into question whether the discharge of the firearm was caused by a volitional act, even though a criminal offense was committed." Bender Op. at 6. The Bender Opinion accepts the Gustafsons' supposition that while the Juvenile Delinquent committed a volitional act when he pulled the trigger, the **firing** was not volitional, because the Juvenile Delinquent believed the gun was not loaded. *Id.* at 6. The Bender Opinion maintains the deterrence effect of product liability actions "would be meaningless if the act of pulling the trigger was indistinguishable from the act of firing the gun for purposes of what constitutes a volitional act in the context of the product-defection exception." *Id.* at 6-7. The Bender Opinion would find "an atypical disconnect in the chain of the causation between pulling the trigger and discharging the weapon[.]" *Id.* at 7.

The Bender Opinion additionally would determine, even if there was a volitional act, that act was not a crime. *Id.* at 9. The Bender Opinion posits, "because the Juvenile Delinquent was not tried as an adult in criminal court, the pertinent act of firing the handgun did not constitute a criminal offense under the undisputed facts of this case." *Id.* I disagree.

"The construction of a federal statute is a matter of federal law." *Samuel–Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 51 (Pa. 2011) (citation omitted). "Pursuant to federal rules of statutory construction, the courts

- 11 -

consider the particular statutory language, as well as the design of the statute and its purposes in determining the meaning of a federal statute." *Id.* In analyzing a federal statute, "we must first determine whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). Where the statute is clear, "We must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

The plain language of the PLCAA concerns a "volitional act"; it includes no *mens rea* requirement and does not reference an actor's acuity or state of mind. The dictionary defines the word "volition" as "the act of using the will; exercise of the will as in deciding what to do [ ] a conscious or deliberate decision or choice[.]" Webster's New World College Dictionary, 1620 (5th ed. 2020). Here, the Juvenile Delinquent acted volitionally in accepting the gun from the babysitter, Brooke Nelson, aiming the gun at J.R., and pulling the trigger.

The Bender Opinion admits, "In typical circumstances, the intentional act of pulling a trigger is effectively identical to intentionally firing the gun, regardless of whether the resulting injury was intended." Bender Op. at 6. The Bender Opinion maintains, "while the Juvenile Delinquent's pulling of the

trigger was volitional, the firing of the gun was not, because **he believed** that the firearm was not loaded when the magazine was discharged." ***Id.*** (emphasis added). However, under the plain language of the PLCAA, the Juvenile Delinquent's "belief" is not germane.

The PLCAA uses the word "volitional" not "intentional"; the terms are not interchangeable, and regardless, we may not substitute language chosen by Congress. ***See Woodford v. Ins. Dept.***, 243 A.3d 60, 73 (Pa. 2020) (citations omitted) ("When the plain language is clear and unambiguous we must not disregard it in pursuit of the law's spirit. When the text of the statute is ambiguous, then — and only then — do we advance beyond its plain language and look to other considerations to discern [Congress's] intent."). Moreover, the unambiguous language of the PLCAA focuses on whether the "act" was volitional. There is no statutory language qualifying the term "volitional" by the actor's state of mind. The Bender Opinion's attempt to distinguish the pulling of the trigger from the gun firing compels an absurd result. ***See Griffin***, ***supra*** ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). I recognize the Juvenile Delinquent did not intend to kill his friend. However, the Juvenile Delinquent's understanding and intent is not relevant to the application of the PLCAA in this case.

The Bender Opinion would also conclude that, because the Juvenile Delinquent was not an adult, his unlawful act of possessing and firing the gun was not a criminal act for purposes of the PLCAA. Bender Op. at 8-9. Again, I disagree.

The PLCAA requires a "criminal offense"; it does not require a criminal charge or conviction, and does not exempt juveniles. 15 U.S.C.A. § 7903(5)(A)(v). **See Adames v. Sheahan**, 909 N.E.2d 742, 761-62 (Ill. 2009) (applying the PLCAA to a juvenile offender and stating that the PLCAA only requires "criminal or unlawful misuse" of a firearm and "does not contain a requirement that there be criminal intent or a criminal conviction[.]").[2] In **Ryan v. Hughes-Ortiz**, 959 N.E.2d 1000 (Ma. App. Ct. 2012), a convicted felon stole two guns; his sister persuaded him to return them, and while doing so, the felon shot himself in the femoral artery. **Ryan**, 959 N.E.2d at 1003. When his estate sued the gun's owner and manufacturer, the Massachusetts Court of Appeals held that the estate's claims were barred by the PLCAA. **Id.** at 1007-08. The court noted that the decedent's possession of the guns was unlawful because he was a convicted felon, and the "PLCAA does not require a criminal conviction in order for an activity to qualify as 'criminal or unlawful misuse.'" **Id.** at 1008.

---

[2] "The decisions of courts of other states are persuasive, but not binding, authority." **Huber v. Etkin**, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) (citation omitted).

In Pennsylvania, a "delinquent act [is] **an act designated a crime under the law of this Commonwealth**, or of another state if the act occurred in that state, or under Federal law[.]" 42 Pa.C.S.A. § 6302 (emphasis added). Thus, **a juvenile can only be adjudicated delinquent if he or she commits a crime**. *See id.* The Legislature does not distinguish adults and juveniles in terms of the **acts** which constitute crimes, only the legal consequences of those acts.

In sum, the focus of the PLCAA is on the act, not the actor. Had Congress intended to exempt crimes committed by juveniles, it could have done so. Under the Bender Opinion's interpretation of the product liability exemption, enforcement of the PLCAA would not be uniform. Rather, it would vary based upon charging decisions of prosecutors — again, an absurd result. *See Griffin*, 458 U.S. at 575. I view the Bender Opinion's interpretation as inconsistent with the intent of Congress and in conflict with our standard of review. *See Hardt*, 560 U.S. at 251. I therefore agree with Judge Kunselman's opinion that the product liability exemption does not apply in this case.

## II.    Is the PLCAA Constitutional?

### Constitutional Claims

The Gustafsons contend the PLCAA "violates the Tenth Amendment and exceeds Congress's Commerce Clause authority." Gustafsons' Supp. Brief at 4. They also maintain the PLCAA violates the Due Process and Equal

Protection Clauses of the Fifth Amendment. Gustafsons' Brief at 39-47. Appellees counter that the PLCAA "easily passes constitutional muster." Appellees' Sub. Brief at 42. The United States as intervenor agrees, stating that the PLCAA "is a valid exercise of Congress's power." United States' Sub. Brief at 8.

Judge Kunselman, while not reaching the Gustafsons' Fifth Amendment claims, agrees with the Gustafsons that the PLCAA violates the Tenth Amendment and exceeds the authority delegated to Congress in the Commerce Clause. Kunselman Op. at 12-36. However, I agree with the Honorable Judith Olson. In her dissenting opinion, she accurately states, "Since its enactment in October 2005, the constitutionality of PLCAA has been challenged in various state and federal courts. Every appellate court that has addressed these issues have found that PLCAA passes constitutional muster." Diss. of J. Olson at 5-6 (footnote omitted).

Pertinently:

The constitutionality of a statute presents a "pure question of law," over which our standard of review is *de novo* and our scope of review is plenary. Our Supreme Court has also offered the following discussion of the burden borne by those seeking to invalidate a statutory scheme on constitutional grounds:

In addressing constitutional challenges to legislative enactments, we are ever cognizant that "[Congress] may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society," but also that "any restriction is subject to judicial review to protect the constitutional rights of all citizens." We emphasize that "**a party challenging a statute must meet the high burden of**

**demonstrating that the statute clearly, palpably, and plainly violates the Constitution.**"

*Commonwealth v. Snyder*, 251 A.3d 782, 792 (Pa. Super. 2021) (citations omitted, emphasis added).

## The Commerce Clause

The Gustafsons suggest, "Congress has no legitimate authority to enact legislation such as [the] PLCAA." Gustafsons' Brief at 47. They maintain the Commerce Clause "does not empower Congress to regulate the lawmaking functions of states." *Id.* Conversely, the United States maintains "the possibility of suits against gun manufacturers and sellers, 'constitute[s] an unreasonable burden on interstate and foreign commerce.'" United States Sub. Brief at 8 (citation omitted). As Judge Olson cogently notes,

> Instead of arguing that Congress lacked authority under the Commerce Clause to regulate interstate and international commerce of firearms, the Gustafsons repackage their argument regarding the Tenth Amendment in terms of the Commerce Clause; *i.e.* state decisions on whether liability standards should be established via common law or through legislation is not commercial activity that may be regulated by Congress.

Diss. of J. Olson at 7.

The Gustafsons' argument does not come close to meeting their "high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." *Snyder*, 251 A.3d at 792. Likewise, the argument in their supplemental brief is primarily a summarization of this Court's decision from the 3-judge panel, which was withdrawn when the case proceeded to *en banc* review. Gustafsons' Supp. Brief at 5-7.

- 17 -

Rather than finding waiver for the Gustafsons' failure to develop their legal argument,[3] Judge Kunselman impermissibly shifts the burden to the United States to prove the PLCAA's compliance with the Constitution. **See** Kunselman Op. at 12-24; **Snyder**, 251 A.3d at 792. It is not our role to develop an appellant's argument. **See Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*); **see also Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review."); **Bombar v. West Am. Ins. Co.**, 932 A.2d 78, 94 (Pa. Super. 2007). The Gustafsons have not presented a cogent legal argument on this issue. Therefore, there is no basis for concluding that the PLCAA exceeds Congress's Commerce Clause authority.

Regardless, the Constitution gives Congress the authority to "regulate commerce ... among the several States." U.S. CONST. art. I, § 8, cl. 3. The United States Supreme Court has interpreted this authority broadly to

---

[3] We have explained,

> When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none. **See** Pa. R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities); **Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) (finding issue waived because the appellant "cited no legal authorities nor developed any meaningful analysis").

**Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 781 (Pa. Super. 2015).

"uph[o]ld a wide variety of congressional Acts regulating intrastate economic activity where we have concluded that the activity substantially affected interstate commerce." *Lopez*, 514 U.S. at 559.  Actions of Congress are valid under the Commerce Clause when Congress acts to regulate "economic activity" that "substantially affects interstate commerce[.]"  *Id.* at 560; *accord Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012).

The PLCAA regulates economic activity that substantially affects interstate commerce.  *See* 15 U.S.C.A. § 7901(a)(6) (finding the possibility of lawsuits against gun manufacturers and sellers "constitute[] an unreasonable burden on interstate and foreign commerce."); *see also Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 392 (Alaska 2013) ("Congress found certain types of tort suits threatened constitutional rights, destabilized industry, and burdened interstate commerce"); *accord City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 394 (2d Cir. 2008).[4] Congress enacted the PLCAA to protect interstate commerce.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) ("[O]ne State's power to impose burdens on the interstate market ... is not only subordinate to the federal power over interstate commerce, but is also constrained by the need to respect the interests of other States." (citation omitted)).

---

[4] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason."  *Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh*, 771 A.2d 39, 43 (Pa. Super. 2001) (citation omitted).

In addition, a "nexus to interstate commerce" must be present. *See Lopez*, 514 U.S. at 562. "[T]he PLCAA only reaches lawsuits that 'have an explicit connection with or effect on interstate commerce.'" *Beretta*, 524 F.3d at 394 (citation omitted). The statute bars tort lawsuits against manufacturers and sellers who manufacture or sell firearms "in interstate or foreign commerce," 15 U.S.C.A. § 7903(2), (6), and where firearms "ha[ve] been shipped or transported in interstate or foreign commerce." *Id.* § 7903(4). The PLCAA does not regulate "truly local" commerce, which is beyond the ambit of the federal government. *Lopez*, 514 U.S. at 568; *see also Ileto v. Glock, Inc.*, 565 F.3d 1126, 1140 (9th Cir. 2009) (rejecting Equal Protection and Due Process challenges and noting "Congress carefully constrained the Act's reach to the confines of the Commerce Clause").

Moreover, unlike the federal prohibition on state authorization of sports gambling found invalid in *Murphy*, 138 S. Ct. at 1481,[5] the PLCAA governs private conduct through its preemption of select suits within its scope, "brought by any person against a manufacturer or seller of a qualified product[.]" 15 U.S.C.A. § 7903(5)(A).

The Gustafsons' contention that the PLCAA does not regulate the conduct of private actors, but instead "dictat[es] to the states how they must exercise their lawmaking functions," lacks merit. Gustafsons' Supp. Brief at

---

[5] The United States Supreme Court found the PLCAA did not "impose any federal restrictions on private actors." *Murphy* at 1481.

6. Congress has the ability to preempt state statutes under its Commerce Clause powers. *See*, *e.g.*, *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, ---, 136 S.Ct. 1288, 1299 (2016) (citations omitted) (holding on Commerce Clause grounds that Maryland's state energy program was preempted by federal law even where state exercised its "traditional authority over energy retail rates"); *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013) (citations omitted) (holding on Commerce Clause grounds that lawsuits based on state common law were preempted by federal statute, and stating, "it has long been settled that state laws that conflict with federal law are 'without effect.'").

The United States Supreme Court has reinforced Congress's power to preempt, under the Commerce Clause, state statutes, tort laws, and even laws of evidence. *See Riegel*, 552 U.S. at 323 (holding federal law preempts state law negligence and product liability claims); *Pierce County v. Guillen*, 537 U.S. 129, 146 (2003) (finding federal statute was not in excess of authority granted to Congress under Commerce Clause; statute "was not intended to be an effort-free tool in litigation against state and local governments."). Accordingly, Congress did not exceed its authority under the Commerce Clause in enacting the PLCAA.

The Commerce Clause gives Congress authority to "regulate the use of the channels of interstate commerce." *Lopez*, 514 U.S. at 558. The Supreme Court recognizes three categories of activity that Congress may regulate under

its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, … *i.e.*, those activities that substantially affect interstate commerce." *Id.* at 558-59.

In enacting the PLCAA, Congress determined that targeted lawsuits "constitute[] an unreasonable burden on interstate and foreign commerce of the United States," 15 U.S.C.A. § 7901(a)(6). Congress acted "[t]o prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce," *id.* § 7901(b)(4). Congress further restricted the PLCAA's reach to the confines of the Commerce Clause. *See*, *e.g.*, *id.* § 7903(2) (including an interstate- or foreign-commerce element in the definition of a "manufacturer"); *id.* § 7903(4) (including the same restriction to a "qualified product"); *id.* § 7903(6) (including the same restriction to a "seller").

Consequently, Congress — properly exercising its authority — determined that insulating the firearms industry from a specific class of lawsuits protected interstate and foreign commerce. As such, I disagree with the Majority's conclusion that the PLCAA was not a valid exercise of Congress's authority under the Commerce Clause.

**The Tenth Amendment**

The Gustafsons argue the PLCAA violates the Tenth Amendment based on its "severe intrusion on state sovereignty and lawmaking authority." Gustafsons' Brief at 35. Without citing any legal authority, the Gustafsons contend the "PLCAA interferes with the sovereign rights of the states to freely choose how to allocate lawmaking functions between the legislative and judicial branches and how to exercise general police powers reserved solely to the states." Gustafsons' Supp. Brief at 4-5.

Appellees counter:

The PLCAA was enacted pursuant to the power to regulate interstate and international commerce that was specifically delegated to Congress through the Commerce Clause in Article I, Section 8 of the Constitution. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992). Accordingly, U.S. Supreme Court precedent holds that a federal statute does not violate the Tenth Amendment unless it commandeers either a state's executive officials or legislative process.

Appellees' Sub. Brief at 54-55.

Similarly, the United States responds,

the critical inquiry with respect to the Tenth Amendment is whether the PLCAA commandeers the states. … [I]t plainly does not. The statute simply preempts certain claims while imposing no affirmative duty of any kind or any branch of the state government.

United States' Sub. Brief at 12 (quotation marks and citations omitted).

The Tenth Amendment provides:

The powers delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the People.

U.S. CONST. amend. X. As the United States Supreme Court explained, state and federal governments are not "co-equal sovereigns." *F.E.R.C. v. Mississippi*, 456 U.S. 742, 761 (1982).

> While th[e United States Supreme] Court never has sanctioned explicitly a federal command to the States to promulgate and enforce laws and regulations, there are instances where the Court has upheld federal statutory structures that in effect directed state decisionmakers to take or to refrain from taking certain actions.

*Id.* at 761-62 (citation omitted).

Judge Kunselman relies on *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) as the sole support for concluding that the PLCAA violates the Tenth Amendment. Judge Kunselman concedes that *Erie R.R.* "did not cite to the Tenth Amendment," Kunselman Op. at 34. *Erie R.R.* is inapposite. Not only does the decision not mention the Tenth Amendment, it does not discuss the Commerce Clause or constitutionality of any federal statute. The case is an outlier — a narrow decision addressing law that **Federal Courts apply in diversity jurisdiction cases**. *See Erie R.R.*, 304 U.S. at 71-80.

Previously, in *Swift v. Tyson*, 41 U.S. 1 (1842), the Supreme Court held that federal courts, in diversity cases, were not obligated to apply state law, but rather, "general principles and doctrines of commercial jurisprudence." *Id.* at 2. In *Erie R.R.*, the Supreme Court recognized this doctrine was "oft-challenged," and resulted in federal courts applying "general law," when no specific state statutes were at issue. *Erie R.R.*, at 69-70. *Erie R.R.* **overruled** *Swift*, finding that *Swift* led to inconsistent results and

forum-shopping, as litigants attempted to create diversity jurisdiction to remove themselves from state law. *Id.* at 72-75. The Supreme Court held:

> Except in matters **governed by the Federal Constitution or by acts of Congress**, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law.

*Id.* at 78 (emphasis added). Thus, *Erie R.R.* is not applicable.

There is no violation of the Tenth Amendment unless "the PLCAA commandeers the states." *Id.* at 742. The anti-commandeering rule has two elements. *See Murphy*, 138 S. Ct. at 1471. First, it prohibits Congress from requiring state legislatures to enact particular laws. *See New York*, 505 U.S. at 175-79 (overturning "take title" provision of the Low-Level Radioactive Waste Policy Act as violating the Tenth Amendment because Congress did not have power to force states to take title of waste properties). Second, Congress may not order executive branch employees of a state or municipality to "administer or enforce a federal regulatory program." *Printz v. U.S.*, 521 U.S. 898, 903, 935 (1997) (declaring a provision of the Brady Act violated the Tenth Amendment because it required state employees to conduct background checks on gun purchasers). However, state courts must enforce federal law. *Id.* at 907.

Here, the PLCAA does not impose an affirmative duty on states or "commandeer" state officials or the state legislative process. The PLCAA provides immunity for manufacturers and sellers of firearms from claims

based on harm caused by third parties.  The PLCAA does not create causes of action, but permits states to do so.  **See** 15 U.S.C.A. § 7903(5)(C) ("[N]o provision of this Act shall be construed to create a public or private cause of action or remedy.").  Thus, the PLCAA does not violate the Tenth Amendment. **Beretta**, **supra** at 306; **Adames**, **supra** at 743; **cf Printz**, 521 U.S. at 903, 907; **New York**, 505 U.S. at 178-79.

## The Fifth Amendment

The Gustafsons argue the PLCAA violates due process because it "extinguishe[s] tort actions without providing a reasonable alternative remedy."  Gustafsons' Brief at 39.  To succeed in a due process challenge, a plaintiff must demonstrate "depriv[ation] of life, liberty, or property . . . without due process of law."  U.S. CONST. amend. V; **see also Washington v. Glucksberg**, 521 U.S. 702, 719-20 (1997) (Due Process Clause of Fifth Amendment includes both a substantive and procedural component).  Regarding claims of unconstitutional property taking, the United States Supreme Court has explained:  "The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of **vested** property rights[.]"  **Landgraf v. Usi Film Prods.**, 511 U.S. 244, 266 (1994) (emphasis added); **see also Town of Castle Rock v. Gonzales**, 545 U.S. 748, 756 (2005) ("The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit':  []To have a property interest in a benefit, a person clearly must

have … a legitimate claim of **entitlement** to it." (emphasis added; citation omitted)).

Here, the trial court concluded that "a potential tort claim, not yet realized or filed at the time of the enactment of [the PLCAA,] would certainly not constitute a vested property right."  Trial Court Opinion, 1/15/19, at 11 (citing **Duke Power Co. v. Carolina Envtl. Study Grp.**, 438 U.S. 59, 88 n.32 (1978) ("Statutes limiting liability are relatively commonplace and have consistently been enforced by the courts.") (citation omitted), and **In re TMI**, 89 F.3d 1106, 1113 (3d Cir. 1996) ("Under the United States Constitution, legislation affecting a pending tort claim is not subject to 'heightened scrutiny' due process review because a pending tort claim does not constitute a vested right.")).

I agree the Gustafsons cannot establish a due process claim as they lack a vested property right.  **See Duke Power Co.**, **supra**; **Ileto**, 565 F.3d at 1141 (rejecting plaintiffs' Fifth Amendment challenge to the PLCAA, stating, "although a cause of action is a species of property, a party's property right in any cause of action **does not vest until a final unreviewable judgment is obtained**." (emphasis added; citation omitted)); **District of Columbia v. Beretta U.S.A. Corp.**, 940 A.2d 163, 176-77 (D.C. 2008) (same); **see also Singer v. Sheppard**, 346 A.2d 897, 903 (Pa. 1975) (citing **Munn v. Illinois**, 94 U.S. 113 (1877), and stating "due process was not violated when legislative action modified the common law.").

Even if the Gustafsons' tort claim constituted a vested property right, I agree with the trial court that the PLCAA "does not deprive [the Gustafsons] of due process, and is thus constitutional." Trial Court Opinion, 1/15/19, at 12. As the Ninth Circuit Court of Appeals expressed:

> [T]he PLCAA does not completely abolish [p]laintiffs' ability to seek redress. The PLCAA preempts certain categories of claims that meet specified requirements, but it also carves out several significant exceptions to that general rule. Some claims are preempted, but many are not. … Plaintiffs' ability to seek redress has been limited, but not abolished.

*Ileto*, 565 F.3d at 1143 (footnote omitted); *see also* Trial Court Opinion, 1/15/19, at 12 (finding *Ileto* persuasive).

Finally, the Gustafsons argue the PLCAA violates their equal protection rights "guaranteed by the Fifth Amendment, by discriminating between classes of tort plaintiffs without any rational basis." Gustafsons' Brief at 44. The Gustafsons claim the PLCAA "creates a discriminatory judicial system in which persons injured by gun industry negligence in states with legislation codifying judicially-created liability standards can recover damages; those harmed on identical facts in states which rely on common law standards cannot recover[.]" *Id.*

The trial court correctly observed, "In assessing an equal protection claim, the appropriate standard must be utilized, and all parties in this matter agree that rational basis review is the appropriate standard here." Trial Court Opinion, 1/15/19, at 13 (citing *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (under rational basis review, statutorily imposed difference in

treatment of two groups "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."")); *see also Heller*, 509 U.S. at 319, 320 (statutory schemes are "accorded a strong presumption of validity," and "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it" (citation omitted)).

The Pennsylvania Supreme Court explained,

> under the rational basis test, if any state of facts can be envisioned to sustain the classification, equal protection is satisfied. Moreover, courts are free to hypothesize reasons why the legislature created the particular classification at issue and if some reason for it exists, it cannot be struck down, even if the soundness or wisdom in creating the distinction is questioned.

*Commonwealth v. Albert*, 758 A.2d 1149, 1153 (Pa. 2000) (citations omitted); *see also FCC v. Beach Comm, Inc.*, 508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data.").

Here, the trial court reasoned:

> The PLCAA's Findings and Purposes section sets out an ample rational basis for any differential treatment found here. 15 U.S.C. § 7901. Congress cites to its important interests in protecting the Second Amendment rights of American citizens to keep and bear arms, as well as the avoidance of an unreasonable burden on interstate and foreign commerce. 15 U.S.C. § 7901(a)(2); 15 U.S.C. § 7901(a)(6). Congress then expresses its belief that judicial remedies might be used to circumvent the democratic legislative processes, and so gives preference to legislatively enacted remedies over judicially created remedies, subject to certain exceptions. 15 U.S.C. § 7901(a)(7); 15 U.S.C. §

> 7901(a)(8). This rationale easily passes rational basis review. Even if this Court were to disagree with Congress' logic, "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" ***Heller*** at 319. As such, PLCAA cannot be found unconstitutional based on an equal protection analysis.

Trial Court Opinion, 1/15/19, at 13. The trial court's reasoning is persuasive.

***See***, ***e.g.***, ***Ileto***, 565 F.3d at 1140-41 ("We have no trouble concluding that Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected."); ***District of Columbia***, 940 A.2d at 175 ("the PLCAA … is reasonably viewed as an adjustment of the burdens and benefits of economic life by Congress, one it deemed necessary in exercising its power to regulate interstate commerce." (citation and brackets omitted)).

For all of the above reasons, I dissent.

Judge Bowes, Judge Olson and Judge McCaffery concur in the result.